ROBERT J. FONTAINE vs. EBTEC CORPORATION & another.[1]

Hampden. February 3, 1993. - May 21, 1993.

Present: LIACOS, C J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Anti-Discrimination Law*, Age, Damages, Termination of employment. *Practice, Civil*, Judicial discretion, Continuance, Attorney's fees. *Damages*, Under anti-discrimination law, Punitive, Attorney's fees, Interest. *Statute*, Retroactive application, Construction. *Attorney at Law*, Compensation.

In an age discrimination case, arising from the termination of the plaintiff's employment, the jury's verdict finding the employer and its parent corporation liable for discrimination under State and Federal law was supported by the evidence, and the judge correctly denied the defendant's motion for judgment notwithstanding the verdict. [312-316]

In an age discrimination case, the defendants were not entitled to a new trial on the ground that, due to a scheduling conflict, their principal witness's testimony was presented through a videotaped deposition, where the scheduling of the trial was properly addressed by the judge under Mass. R. Civ. P. 40 (a) and (c). [316-317]

In a civil action, this court declined to consider on appeal an argument not raised at trial. [317]

Amendments to G. L. c. 151B, § 9, that provide for awards of enhanced damages in age discrimination cases were not applicable retrospectively to a case pending at the time of the amendments' effective date, or to conduct occurring prior thereto. [318-321]

In age discrimination cases, punitive damages are not available as a remedy, inasmuch as G. L. c. 151B, § 9, 4th par., inserted by St. 1990, c. 395, provides, when appropriate, that multiple damages be awarded. [321-322]

A plaintiff in an age discrimination case, asserting claims under both State and Federal law, was entitled to "liquidated damages" for violations of the Federal Age Discrimination in Employment Act where he proved that the defendants' acts were wilful. [322-323]

A fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee ("lodestar" award) awarded under G. L. c. 151B. [324-326]

[1]Thermal Scientific, PLC.

In a noncomplex age discrimination case, the appropriate attorney's fee award, calculated by the lodestar method, was adequate, and enhancement of the fee, in the circumstances, was not warranted. [326]

In an age discrimination case the plaintiff was entitled to prejudgment interest on the compensatory damages awarded on his State law claim, dating from the commencement of the action [326-327], and postjudgment interest of the liquidated damages awarded on his Federal claim, dating from the date of the jury's verdict [327-328].

CIVIL ACTION commenced in the Superior Court Department on March 3, 1988.

The case was tried before *William H. Welch*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*John J. Egan* (*Maurice M. Cahillane & David G. Cohen* with him) for the plaintiff.

· *Richard D. Hayes* for the defendants.

*Stephen S. Ostrach & Emily R. Livingston*, for Associated Industries of Massachusetts, amicus curiae, submitted a brief.

*George P. Napolitano*, for Massachusetts Commission Against Discrimination, amicus curiae, submitted a brief.

GREANEY, J. In January, 1988, the plaintiff was discharged from his position as vice president of Ebtec Corporation, an American subsidiary of Thermal Scientific, PLC, a British company (defendants). A jury in the Superior Court found for the plaintiff in his ensuing claims that the defendants had violated G. L. c. 151B, § 4 (1B) (1990 ed.), the Massachusetts statute which prohibits age discrimination, and 29 U.S.C. §§ 621 et seq. (1988), the Federal Age Discrimination in Employment Act (ADEA). The jury concluded, in response to special questions, that the defendants' violations had been wilful.[2] The jury awarded the plaintiff actual damages for lost wages and benefits ($270,422) and for emo-

---

[2]The jury also found in the plaintiff's favor on breach of contract claims awarding the plaintiff $60,000 in severance pay and $5,000 in lieu of vacation pay. The judgment on these claims has not been challenged on appeal.

tional distress ($80,000),[3] and also assessed punitive damages ($600,000). On the basis of G. L. c. 151B, § 9, as amended through St. 1990, c. 395, the judge doubled the award of actual damages, and he also awarded $132,323 in attorney's fees. See G. L. c. 151B, § 9 (1990 ed.). An amended judgment was entered which awarded the plaintiff $590,844 in actual damages,[4] and $600,000 in punitive damages, and $132,323 in attorney's fees on his claims under G. L. c. 151B, and $1 on his claim under the ADEA.[5] Both sides have appealed, and we granted the plaintiff's application for direct appellate review. In part I of this opinion, we deal with the issues pertaining to liability and a new trial, concluding that the jury's liability verdict was warranted and that there is no basis for a new trial. In part II of the opinion, we discuss the issues relating to damages. We conclude that amendments to G. L. c. 151B, § 9, which provide for punitive and multiple damages, should not have been applied retrospectively in this case and, consequently, that the plaintiff is not entitled to recover enhanced damages under State law. We discuss the appropriate measure of damages in an age discrimination case brought pursuant to G. L. c. 151B. We conclude that the plaintiff is entitled to enhanced damages for lost wages and benefits under the ADEA. In part III of the opinion, we take up the issues relating to attorney's fees and interest.

I. *Liability and New Trial Issues.*

We first discuss the defendants' assertions that judgment notwithstanding the verdict (n.o.v.) should have entered in their favor or, at the very least, that they are entitled to a new trial.

---

[3] The plaintiff agreed to accept a remittitur of $55,000 on the emotional distress damages which reduced the amount of this recovery to $25,000.

[4] This amount represented the sum of $270,422 for lost wages and benefits and $25,000 in damages for emotional distress. The amount was then doubled by the judge under the amended G. L. c. 151B, § 9.

[5] The nominal sum of $1 awarded on the ADEA claim reflects the judge's determination that an independent award of damages on the Federal law claim would be duplicative of the awards made on the claims under State law. See *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 235-236 (1984) (prohibiting recovery of cumulative damages under multiple counts of a complaint).

1. The defendants argue that their motion for judgment n.o.v. should have been allowed because the evidence was insufficient, as matter of law, to warrant a finding by the jury that they had discharged the plaintiff in violation of age discrimination laws. At the time of his discharge, the plaintiff was fifty-one, and, consequently, within the class of persons (over forty years of age) protected by the age discrimination laws. G. L. c. 151B, § 1 (8) (1990 ed.). The plaintiff presented evidence which made out a prima facie case that his discharge was discriminatory. See *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973); *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 229 (1978); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 n.5 (1976). The defendants presented evidence which would have warranted a finding that the plaintiff was discharged for unsatisfactory job performance. See *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 435 (1989); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, *supra* at 138. See also *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 565-566 (1981). On the judgment n.o.v. point, therefore, the issue on appeal comes down to whether the evidence considered in the light most favorable to the plaintiff, and with all reasonable inferences drawn in his favor, see *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 470 (1993), warranted the jury's finding that the plaintiff's allegedly poor job performance was merely a pretext for a discharge actually based on concerns about his age.[6]

---

[6]The defendants argue at some length that the plaintiff failed to show, as part of his prima facie case, that he was qualified for the position he held. The plaintiff's technological knowledge and ability were undisputed, and, as will next be discussed, the evidence warranted a finding that his job performance was satisfactory. The defendants' contention about the plaintiff's qualifications is in substance another side of their argument that he was properly discharged for substandard performance. This leaves the central issue on liability as stated in the text. See *United States Postal Serv. Bd. of Governors* v. *Aikens*, 460 U.S. 711, 715 (1983). The standards of liability governing that issue are substantially the same under the

Under the applicable n.o.v. standard, the jury could have found the following. In August, 1980, the plaintiff joined Ebtec, located in Agawam, as manager of the company's electron beam welding and laser "job shop." The company was at that time a closely held corporation, which was owned by two individuals. Under the plaintiff's management, the shop acquired new customers and sales and profits rose substantially. At the end of 1986, Ebtec was sold to Thermal Scientific, a British conglomerate. Thomas Liebermann was appointed to oversee Ebtec (and six other American operations owned by Thermal Scientific). Liebermann reported to Robert Huddie, who was responsible for all of Thermal Scientific's American operations.

In July, 1987, Liebermann promoted the plaintiff to executive vice president and general manager of Ebtec and gave the plaintiff specific goals in terms of pretax sales and profits. The plaintiff generally met those goals until the stock market "crash" of October, 1987, which had an adverse impact on many of the companies for which Ebtec performed services. In December, 1987, Liebermann evaluated the plaintiff. The evaluation was designed to identify for the plaintiff significant weaknesses in his management skills that would have to be addressed before the plaintiff's promotion to president of Ebtec could be considered. Liebermann disclaimed any intent of terminating the plaintiff's employment with Ebtec. According to Liebermann, the question was whether the plaintiff would work for Ebtec as a production manager or whether he would be promoted to president of Ebtec.

Also in December, 1987, Liebermann decided that, because of changes in the company's business goals caused largely by the October stock market crash, he would leave Thermal Scientific. He had conveyed this fact to Huddie by December, 1987, and had begun to disengage himself from

---

State and Federal antidiscrimination statutes. See *Villanueva* v. *Wellesley College*, 930 F.2d 124, 127 n.2 (1st Cir.), cert. denied, 502 U.S. 861 (1991); *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 438 (1989).

the company's operations. Huddie, not Liebermann, made the decision to terminate the plaintiff.

On or about January 15, 1988, the plaintiff attended a meeting at which executives from Thermal Scientific's American companies presented their budgets. Huddie presided over the meeting. The plaintiff testified that Huddie, reflecting on the reports that had been presented to him, commented that "there was a real problem in [Ebtec and another company] because both managers were old. One was in his fifties and the other was in his sixties, and it was absolutely necessary to get young management into these companies as soon as possible."[7] The plaintiff became concerned for his job at this meeting. He was terminated ten days later. His re-

---

[7] On direct examination, the plaintiff testified that Huddie used the word "replace" in speaking of the management of these two companies. On cross-examination, the plaintiff specifically retracted this testimony and stated that Huddie had not used the word "replace." The jury were left with the testimony as quoted in the text of this opinion as the final statement of the plaintiff's memory of the conversation. See *Harlow* v. *Chin*, 405 Mass. 697, 706-707 n.11 (1989). The defendants contend that the plaintiff's testimony can only be taken as expressing a concern on Huddie's part about the depth of the management teams at the two companies under scrutiny, and, therefore, that Huddie's purported comments could not be considered on the issue of liability. We disagree. The jury reasonably could have inferred, whether or not Huddie used the word "replace," that he thought that the managers of these companies were too old and that younger managers should be found to take their places. Similarly, testimony by the defendants' witnesses that Huddie might not have made the remarks attributed to him was for the jury to consider. Ultimately, the jury had to decide whether the remarks were made, whether they indicated a discriminatory intent, and how much weight should be given them. See *Bechold* v. *IGW Sys., Inc.*, 817 F.2d 1282, 1286 (7th Cir. 1987).

The defendants have referred to several decisions stating that isolated or ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent. See *Gagne* v. *Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989) (isolated, ambiguous remark by supervisor insufficient to create material issue as to whether employer discriminated based on age); *Leichihman* v. *Pickwick Int'l*, 814 F.2d 1263, 1271 (8th Cir.), cert. denied, 484 U.S. 855 (1987) (jury properly instructed that single statement referring to age, standing alone, did not necessarily prove an intent to discriminate). We do not quarrel with the proposition stated in these decisions, but it has no application in this case. The plaintiff provided additional evidence to support the remarks and to prove unlawful discrimination.

placement, a thirty year old Thermal Scientific executive to whom the plaintiff had given basic courses in the technology that constituted Ebtec's business, was given the title of president of Ebtec.

There was additional evidence from which the jury reasonably could have inferred that Huddie desired to replace older managers with younger ones. Liebermann testified that Huddie considered American age discrimination laws to be an unnecessary "fuss" and complained to him (Liebermann) about the age of certain managers in American Thermal Scientific companies. Liebermann also testified that he felt compelled to call the age discrimination laws to Huddie's attention, and to insist that he, Liebermann, would not participate in any adverse employment decision based on an employee's age. From this evidence, the jury reasonably could have inferred that Huddie had raised with Liebermann the possibility of an age-related discharge at a Thermal Scientific company under Liebermann's supervision.

In addition to this evidence of discriminatory intent, there was evidence from which the jury reasonably could have inferred that Huddie's stated reason for terminating the plaintiff (unsatisfactory job performance in the sense of a failure to perform in relation to budgets and forecasts) was a pretext. The jury could have concluded that Ebtec's declining profitability in November and December of 1987 was caused by the stock market crash, an event beyond the plaintiff's control. There was evidence that the plaintiff's superiors were fully aware of the effect of the stock market collapse on Ebtec's business. The plaintiff indicated that he was discouraged from attempting to adjust his forecasts to reflect changed circumstances. The jury also could have concluded that other evidence concerning the plaintiff's alleged poor · performance was of little or no relevance, in light of Huddie's reason for the discharge.[8] The jury's verdict finding lia-

---

[8]The defendants suggest that the plaintiff had to prove that the defendants reasonably could not have discharged him based on his performance. This is not an accurate statement of the plaintiff's burden of proof with respect to pretext. The plaintiff had to present evidence from which the

bility for discrimination under State and Federal law was supported by the evidence.

2. In February, 1991, the defendants moved for a firm trial date of either February 26, 1991, or on the first trial day in April, 1991, giving as a reason the conflicting travel schedules of their principal witnesses, Liebermann and Huddie. The motion judge scheduled the matter as first trial out in the March, 1991, inventory session. Because Huddie would be unavailable on this date, the defendants moved for reconsideration, seeking an April date, or, in the alternative, permission to videotape Huddie's testimony. Permission was given to videotape Huddie's deposition, and the videotape was shown to the jury as part of the. defendants' case. The defendants nonetheless maintain that the absence of live testimony by Huddie so prejudiced their defense that a new trial is required.

The scheduling of a trial is a matter within the sound discretion of a motion or trial judge. See *Noble* v. *Mead-Morrison Mfg. Co.*, 237 Mass. 5, 16 (1921); *Beninati* v. *Beninati*, 18 Mass. App. Ct. 529, 534 (1984); Mass. R. Civ. P. 40 (a), 365 Mass. 802 (1974). "When [a] trial is . . . imminent as it was in this case, a judge may give weight to the public interest in the efficient operation of the trial list and to the interests of other parties who are ready for trial." *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 292 (1977). Rule 40 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 802 (1974), which addresses requests for a trial continuance based on the absence of a material witness, plainly contemplates testimony in the form of a deposition as a substitute for live testimony. Huddie's videotaped deposition, which permitted the jury to observe his demeanor and tone, represented a reasonable accommodation between

---

jury reasonably could find that his performance, despite evidence of deficiencies, was not the reason for his discharge. The plaintiff also had to present evidence that, but for his age, more likely than not, he would not have been discharged. *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 566 (1981). He satisfied the requisite burden of proof.

the defendants' need for Huddie's testimony, the plaintiff's interest in a prompt trial, and the efficient administration of the Superior Court trial list. It was not error to deny the defendants' motion for a new trial on this basis.

3. The defendants claim that the plaintiff's attorney's closing argument contained an improper appeal to regional bias. The defendants failed to object at trial to what constituted a relatively minor portion of the argument, despite the well-established rule that a closing argument which is considered to be improper should be called to the attention of the trial judge at once. *Commonwealth* v. *Johnson*, 374 Mass. 453, 458 (1978), and cases cited. The content of the criticized argument is not of significance. See *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509 (1988). We decline to exercise our discretion to consider the claim of error now argued. *Id. Rice* v. *James Hanrahan & Sons*, 20 Mass. App. Ct. 701, 712 (1985).

II. *Damages Issues.*

As has been noted, the plaintiff's discharge occurred in January, 1988. The amendments to G. L. c. 151B, § 9, authorizing the recovery of punitive damages in a discrimination case, and multiple damages in an age discrimination case, were enacted in 1989 and 1990, respectively, subsequent to the plaintiff's discharge.[9] In neither case did the

---

[9]By St. 1989, c. 722, § 31, the Legislature amended the third paragraph of G. L. c. 151B, § 9, to add the following sentence: "If the court finds for the petitioner, it may award the petitioner actual and punitive damages."

By St. 1990, c. 395, the Legislature added a fourth paragraph to G. L. c. 151B, § 9, which applied to age discrimination cases. This paragraph reads as follows:

"Any person claiming to be aggrieved by a practice concerning age discrimination in employment made unlawful by section four may bring a civil action under this section for damages or injunctive relief, or both, and shall be entitled to a trial by jury on any issue of fact in an action for damages regardless of whether equitable relief is sought by a party in such action. If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the act or practice complained of was committed with knowledge, or reason to know, that such act or practice violated the provisions of said section four. The provisions set forth in the first, second and third paragraphs shall be applicable to such complaint or

Legislature direct that these amendments were to be given retrospective application. The defendants contend that, in the absence of language mandating retrospective application, the new provisions increasing damages should not be applied to conduct occurring prior to their effective date, and consequently, that the plaintiff's recovery of both multiple and punitive damages under G. L. c. 151B, § 9, should be set aside. We agree with this contention. To clarify the damages questions in an age discrimination case under G. L. c. 151B, we go on to conclude that a plaintiff who proves discrimination because of age is entitled to recover multiple damages only. We also conclude that the plaintiff is entitled to recover additional damages for lost wages and benefits under the provisions of the ADEA.

1. Whether a statute applies retrospectively is a question of legislative intent. In the absence of an express legislative directive, this court has usually applied "[t]he general rule of interpretation ·. . . that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubtless all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action." *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626 (1974), quoting *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). See *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977); *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 683 (1970).

---

action to the extent that such provisions do not conflict with the provisions set forth in this paragraph."

Although this rule is easily stated, the distinction between legislation that concerns "substantive rights," and legislation that concerns "procedures" and "remedies," has proved to be difficult to draw. *City Council of Waltham* v. *Vinciullo*, *supra* at 627 & n.6. It appears from the context, and from a review of our prior decisions, that the term "remedies," as it was used in *Hanscom* v. *Malden & Melrose Gas Light Co.*, *supra*, has only encompassed essentially procedural legislation which preserves a remedy that might otherwise be lost, or which creates a new enforcement mechanism for remedying the impairment of an existing legal right. For example, retrospective application has been given to legislation extending the time for filing for an application for a tax abatement, *Lindberg* v. *State Tax Comm'n*, 335 Mass. 141, 143 (1956); to legislation modifying the requirements for filing an application for a tax abatement, *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 249 (1932); and to legislation providing direct access to the courts to enforce preexisting legal rights, *Selectmen of Amesbury* v. *Citizens Elec. St. Ry.*, 199 Mass. 394, 395 (1908). It would appear to be the rule in other jurisdictions that only this type of remedial legislation is given retrospective effect. See 1A Singer, Sutherland Statutory Construction § 22.36, at 301 (4th ed. 1985) (a statutory amendment "that affect[s] procedural rights — legal remedies — [is] construed to apply to all cases pending at the time of its enactment").

As have other jurisdictions, we have recognized that legislation limiting or increasing the measure of liability, while arguably remedial in the broad sense of that word, generally is considered to impair the substantive rights of a party who will be adversely affected by the legislation. In the absence of a provision mandating retrospective application, we have not assumed that such legislation applies to claims arising prior to enactment.[10] See *USM Corp.* v. *Marson Fastener Corp.*,

---

[10]An exception may concern legislation that affects the substantive rights of the Commonwealth. Such legislation generally has been given retrospective application. See *Greenaway's Case*, 319 Mass. 121, 123 (1946) (acknowledging that the Commonwealth's right to receive workers' com-

392 Mass. 334, 353 (1984) (suggesting that statute changing the measure of damages after tort has been committed should not be given retrospective effect); *Austin* v. *Boston Univ. Hosp.*, *supra* at 657 (recognizing substantive aspect of legislation that imposes costs, and witness, expert, and attorney's fees on an unsuccessful litigant); *Cudlassi* v. *MacFarland*, 304 Mass. 612, 613 (1939) (declining, in the absence of legislative directive, to give retrospective effect to statutory amendment eliminating double damages in tort case). See also *Lavieri* v. *Ulysses*, 149 Conn. 396, 402 (1962), and cases cited; *LaBarre* v. *Daneault*, 123 N.H. 267, 271-272 (1983). The large amount of the judgment entered in this case clearly demonstrates the force of the amendments to G. L. c. 151B, § 9, on a defendant's potential liability. If the Legislature had intended the amendments to G. L. c. 151B, § 9, providing enhanced damages to apply to cases pending at the time of their enactment, or to conduct occurring prior thereto, the legislation logically would have contained an express directive to that effect.[11] In the absence of such a direc-

---

pensation funding from city was a substantive right, but giving retrospective application to legislation reducing the amount required to be paid).

*Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Comm'n*, 377 Mass. 847, 850 (1979), on which the plaintiff relies, gives retrospective effect to legislation augmenting the remedies available to an employee of the Commonwealth who claims to have been discriminated against because of union activity. It is obvious that this legislation impairs the substantive rights of the Commonwealth. We have nonetheless considered it appropriate to give retrospective application to such legislation because the legislation does not adversely affect the rights of private parties. *Id.*

[11]We are aware that in *Contardo* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 753 F. Supp. 406 (D. Mass. 1990), a United States District Court judge concluded that St. 1989, c. 722, § 31, could apply retroactively because it was a "remedial" change. *Id.* at 412. This decision, unsupported by an analysis of Massachusetts case law, is not persuasive.

The plaintiff has brought to our attention a decision of the Massachusetts Commission Against Discrimination (commission) giving retrospective effect to St. 1989, c. 722, § 27, a statutory amendment permitting the commission to award attorney's fees to a plaintiff who prevails in his claim before the commission. See Charles T. Brown *vs.* City of Salem Police Department, MCAD No. 79-BEM-0309 (Nov. 30, 1992). This legislation simply entitles plaintiffs who pursue their cases before the commission to a

tive, or any other discernible indication of the Legislature's intent, the plaintiff was not entitled to recover increased damages under the new provisions of G. L. c. 151B, § 9.

2. We think it appropriate to comment on the question whether a plaintiff with an age discrimination claim that is subject to the amendments to G. L. c. 151B, § 9, governing damages is entitled, on proper proof, to recover *both* multiple and punitive damages. The parties have briefed the issue and the question will undoubtedly arise in cases pending for trial in the Superior Court.

"As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present." *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 283 (1991). *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). Section 9 of G. L. c. 151B sets forth procedures to be followed, and the remedies available, to a plaintiff filing an action based on illegal discriminatory conduct. The third paragraph of § 9 now provides that punitive damages "may" be awarded to a plaintiff prevailing in such an action. The fourth paragraph of § 9 now sets forth remedies available to a plaintiff who prevails on a specific claim of age discrimination. In the case of a knowing or reckless statutory violation, those remedies include mandatory double (and discretionary treble) damages. Both paragraphs address the same topic — that is, the measure of damages to be awarded to a plaintiff who proves discriminatory conduct by his employer. The measure of damages provided by each paragraph also serves a similar

---

remedy commensurate with the remedy to which they would be entitled if they filed suit, and prevailed, in a State or Federal court. As legislation providing an adequate alternative forum for remedying the impairment of an existing legal right, see *Selectmen of Amesbury* v. *Citizens Elec. St. Ry.*, 199 Mass. 394, 395 (1908), § 27 of St. 1989, c. 722, was appropriately given retrospective application by the commission. We note that the commission, which filed an amicus brief in this case, has not taken the position that retrospective application of St. 1989, c. 722, § 31, and St. 1990, c. 395, is necessary for the effective enforcement of the Commonwealth's laws against discrimination by employers.

purpose because multiple damages are "essentially punitive in nature." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990). See *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 856 (1983). With respect to the remedies available in age discrimination cases, punitive damages, as such, are not mentioned in the amended third paragraph. Based on accepted principles of statutory construction, their availability should not be implied and we decline to do so.

This conclusion comports with what we perceive to be the legislative intent as well as "with common sense and sound reason." *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976), quoting *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Comm'n*, 354 Mass. 408, 414 (1968). The fourth paragraph was added to § 9 of G. L. c. 151B to enhance, or improve on, damages for age discrimination. A recovery of punitive damages under the third paragraph of § 9 of G. L. c. 151B is discretionary, and, therefore, uncertain. By way of contrast, the fourth paragraph provides for a certain recovery of at least double damages if the plaintiff proves that he was deliberately discriminated against on the basis of his age. It is not reasonable to assume that the Legislature intended to design a damages scheme which singles out age discrimination as significantly more egregious than, for example, racial or sexual discrimination by granting a victim of age discrimination the right to recover *both* punitive and multiple damages. We conclude that the fourth paragraph of the current G. L. c. 151B, § 9, see note 9, *supra*, establishes the appropriate measure of damages in an age discrimination claim.

3. The jury found that the defendants had violated the ADEA and acted wilfully in doing so. The amended judgment awarded the plaintiff $1 on the ADEA claim on the premise that anything more would duplicate the substantial damages that already had been awarded under G. L. c. 151B. See note 5, *supra*. The ADEA provides for awards of "liquidated" damages "in cases of willful violations of this chapter." See 29 U.S.C. § 626 (b). "Liquidated damages," as that term is used in the ADEA, "are defined as an amount

equal to the pecuniary losses suffered by the discharged employee by way of lost wages, salary increases and other benefits." *Biggins* v. *Hazen Paper Co.*, 953 F.2d 1405, 1412 (1st Cir. 1992), vacated on other grounds, 113 S. Ct. 1701 (1993). *Cassino* v. *Reichhold Chems., Inc.*, 817 F.2d 1338, 1348 (9th Cir. 1987) (liquidated damages are an additional amount equal to the back pay and benefits award), cert. denied, 484 U.S. 1047 (1988). Such damages do not include damages for emotional distress. The plaintiff was awarded $270,422 for lost wages and benefits. It is appropriate to inquire whether this amount should now be the recovery under the ADEA.[12]

The judge instructed the jury that they should find a wilful violation of the ADEA if they found that the defendants "either knew or showed a reckless disregard for the matter of whether [their] conduct was prohibited by the Age Discrimination in Employment Act." The instruction, which was not objected to, was a correct statement of law. *Hazen Paper Co.* v. *Biggins*, 113 S. Ct. 1701 (1993). The jury found that the defendants' discriminatory conduct was wilful. There was sufficient evidence to warrant this finding. Liebermann testified that he had specifically warned Huddie about American age discrimination laws prior to the plaintiff's termination, and that he (Liebermann) felt the need to insist that he have no participation in any employment decisions that were based on an employee's age. Huddie testified unequivocally that he knew, prior to Thermal Scientific's acquisition of Ebtec, and thus prior to the plaintiff's discharge, that it was unlawful for an employer in the United States to discriminate on the basis of age. Based on this evidence and the other evidence in the case, and the instruction given by the judge, the jury reasonably were warranted in finding that the defendants had knowingly, and, therefore, wilfully violated the ADEA. See *Biggins* v. *Hazen Paper Co., supra* at 1415.

---

[12]The plaintiff filed a cross appeal from the judgment entered on the ADEA claim and thus properly preserved this issue for consideration.

III. *Attorney's Fees and Interest.*

The plaintiff has appealed from the award of $132,323 in attorney's fees, an amount which was calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate. (A fee calculated by this method is generally referred to as a "lodestar" award. See, e.g., *Hensley* v. *Eckerhart*, 461 U.S. 424 [1983]; *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 3121, 321 [1982].) The judge declined to increase the fee award, concluding that State law did not permit such enhancement.

The amount of a reasonable attorney's fee, awarded on the basis of statutory authority, in this case G. L. c. 151B, § 9, is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services. We determine the limits within which this discretion may be exercised. *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). The plaintiff's appeal raises the question whether an attorney's fee, calculated by the lodestar method, may be enhanced in recognition of the contingent nature of an attorney's recovery in these cases.[13] In limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment. We do not think, however, that an enhanced fee award is justified in this case.

We have not had occasion to address how attorney's fees awarded under c. 151B should be calculated. In the analogous area of fee awards based on G. L. c. 93A (1990 ed.), we said in *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978), that in calculating a fee award, a judge should

---

[13]It is clear that attorney's fees awarded under the ADEA cannot be enhanced above the lodestar amount to reflect the contingent nature of recovery in these cases. *Burlington* v. *Dague*, 112 S. Ct. 2638, 2643-2644 (1992). The plaintiff has received all he is entitled to receive for his Federal claims. In a case of mixed Federal-State law claims depending on the same facts, if State law permits a more generous recovery than does Federal law, the plaintiff is entitled to seek recovery based on State law. *Freeman* v. *Packaging Mach. Co.*, 865 F.2d 1331, 1350 (1st Cir. 1988). We thus consider the permissible measure of an attorney's fee based on the fee-shifting provision in G. L. c. 151B.

consider "(1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney." In *Linthicum* v. *Archambault, supra* at 388-389, the list of factors lengthened, to include: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." The list of factors matched the standard in effect in the Federal courts at that time. *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 764 (1979). In *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 321 (1982), a case arising under a Federal fee-shifting statute, it was said, in reference to this list of factors, that their application "do[es] not lead with any certainty to a number of dollars." In choosing among the various approaches then current in the Federal courts, it was said: "We believe it is enough to state . . . that . . . fair market rates for time reasonably spent should be the basic measure of reasonable fees, and should govern unless there are special reasons to depart from them" (footnote omitted). *Id.* at 322. The most recent in this line of cases, then, expresses basic approval of the lodestar approach, now mandated in Federal fee-shifting cases, and used by the judge in this case. The Massachusetts Commission Against Discrimination has also employed the lodestar method as its starting point in calculating a reasonable attorney's fee under c. 151B, § 5, as amended through St. 1989, c. 722, § 27. Karen Baker *vs.* Town of Winchester School Committee, MCAD No. 87-BEM-0283 (Nov. 12, 1991).

The lodestar approach has the advantage of producing generally consistent results from case to case. Its use in the courts of the Commonwealth may also reduce forum shopping. Because State and Federal antidiscrimination laws prohibit similar conduct, attorney's fees available in both fora should, for the most part, be calculated in a similar manner. *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against*

*Discrimination*, 371 Mass. 303, 310 (1976). To the extent that our cases may have been ambiguous on this point, we repeat what was said in *Stratos* v. *Department of Pub. Welfare, supra*. A fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law.

We turn to the plaintiff's contention that the lodestar figure should be enhanced in this case to compensate for the risk that his attorneys would receive no payment for their work.[14] The judge noted that the issues in the case were not complex, and that it had features of emotional appeal to a jury, "lending itself to a reasonably good chance of success." The determination of liability raised no novel issues of law. The case had significance for the plaintiff, but not for a wider class of persons. The statutory provision for attorney's fees aims to attract competent legal counsel for those with meritorious claims. It is not designed to provide a windfall recovery of fees. *Stratos* v. *Department of Pub. Welfare, supra* at 322. We are satisfied that, in a simple discrimination case, the basic fee award, calculated by the lodestar method, is adequate to achieve the statutory purpose. We agree with the judge that enhancement of the fee was not warranted in this case.

2. The defendants and the plaintiff dispute the calculation of interest provided for by the amended judgment. We decide the issues still relevant. Contrary to the defendants' contention based on State law, the plaintiff is entitled to prejudg-

---

[14]The plaintiff appears to argue that he should recover an attorney's fee award equal to one-third of the total damages awarded to him. He asserts that, since these cases are often accepted on the basis of a contingent fee agreement between client and attorney, the one-third measure accurately reflects the value of legal services in the relevant market. The contingent fee agreement has obvious deficiencies as a model for determining attorney's fees in the areas of discrimination, civil rights, and consumer protection cases. It would be difficult, if not impossible, to value the injunctive relief which is often the goal in such suits. *Burlington* v. *Dague, supra* at 2643 n.1. Such a method of calculating attorney's fees also would not provide adequate compensation where the right sought to be vindicated is important but damages are modest. *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 323 (1982).

ment interest on his compensatory damages from the commencement of the action. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 716 (1990); *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 320 (1988). Prejudgment interest on compensatory damages is designed to make a plaintiff whole for the loss of money during the time it was owed but not paid. *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988). In contrast, an award of liquidated or multiple damages is essentially punitive in nature. See *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 125 (1985); *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, *supra* at 717. In our view, a recovery of prejudgment interest on compensatory damages and of multiple or liquidated damages is not duplicative.[15]

The Federal courts treat postjudgment interest on State law claims as a matter of procedure governed by Federal statute. See *Northrop Corp.* v. *Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155-1156 (9th Cir. 1988); *Weitz Co.* v. *Mo-Kan Carpet, Inc.*, 723 F.2d 1382, 1385-1387 (8th Cir. 1983). In the absence of briefing on this issue by the parties, we too shall treat the matter as one of procedure, and apply State law to the question of postjudgment interest on the plaintiff's liquidated damages award. General Laws c. 235, § 8 (1990 ed.), allows postjudgment interest from the date of the verdict "at the same rate per annum as provided for prejudg-

---

[15]We are aware that the majority rule in the Federal courts is that a plaintiff may not recover prejudgment interest *and* liquidated damages under the ADEA. See *Powers* v. *Grinnell Corp.*, 915 F.2d 34, 39-42 (1st Cir. 1990), and cases cited. But see *Reichman* v. *Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 281-282 (2d Cir. 1987); *Lindsey* v. *American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 (11th Cir. 1987). The judgment entered awarded the plaintiff his actual damages based on his c. 151B claim. The parties have treated the plaintiff's actual damages as an award on State law. "[W]hen a plaintiff secures a jury verdict based on state law, the law of [the] state governs the award of prejudgment interest [on that claim]." *Aubin* v. *Fudala*, 782 F.2d 287, 289 (1st Cir. 1986). See *Freeman* v. *Packaging Mach. Corp.*, 865 F.2d 1331, 1345 (1st Cir. 1988) (awarding prejudgment interest on G. L. c. 151B claim). The plaintiff may therefore recover prejudgment interest in this case, even though he received liquidated damages based on his ADEA claim.

ment interest." *Militello* v. *Ann & Grace, Inc.*, 411 Mass. 22, 28 (1991). The plaintiff is entitled to postjudgment interest on the liquidated damages award under the ADEA from March 12, 1991, the date of the jury's verdict.

IV. *Disposition.*

The amended judgment, entered on June 16, 1992, is affirmed as to its entries concerning counts I and II. See note 2, *supra.* The remainder of that judgment is vacated. An additional judgment is to be entered which (a) on count III awards the plaintiff $295,422 in damages plus interest from March 3, 1988, and $132,323 in attorney's fees and $6,965.24 as costs with interest thereon from the date of the verdict, March 12, 1991, and (b) on count IV awards the plaintiff $270,422 plus interest from the date of the verdict, March 12, 1991.

*So ordered.*