Murphy, J.
On September 14, 1993, plaintiff T&D Video (“T&D”) applied to defendant City of Revere to build out and operate an adult video store in Revere. Consequently, the City of Revere implemented zoning ordinances restricting adult entertainment to a certain district and requiring conformity with set-back, space and location provisions. Citing the zoning ordinance as a violation of T&D’s First Amendment rights, pursuant to 42 U.S.C. §1983 and G.L.c. 12, §11H, T&D filed for injunctive relief against the City of Revere seeking to enjoin it from enforcing the ordinance.[2] On Oct. 23, 2002, the court entered judgment for T&D, thereby permanently enjoining the City of Revere from enforcing the adult use zoning ordinance because it constituted an unconstitutional prior restraint on speech.
T&D now files this petition seeking an award, as provided by 42 U.S.C. §1988 and G.L.c. 12, §111, for attorneys fees and costs associated with the prosecution of its complaint against the City of Revere. T&D contends that the City of Revere owes it $1,209,585.33 in attorneys fees and costs.[3] The City of Revere opposes the petition, arguing that the amount T&D seeks is either so egregiously disproportionate to the reasonable fees and costs required for the prosecution of the matter that the court should deny the petition in its entirely, or, alternatively, that the Court reduce the amount sought substantially, suggesting an award of $50,000.00 to be appropriate.
BACKGROUND
In September 1993, T&D signed a lease and prepared to open an adult video store at 55 American Legion Highway, Revere, Massachusetts. T&D’s principals sought a business certificate from the Office of the City Clerk of Revere (“Clerk”). A Clerk employee informed T&D’s principals that they would first need to go to the City Solicitor’s Office to complete a video store business form. Upon T&D’s return, the Clerk’s office requested that T&D’s principals sign an agreement stating that they would not sell adult videos or other adult-related material. T&D refused to sign the agreement but the Clerk nonetheless issued the business certificate. On September 16, 1993, the Mayor of Revere, Robert J. Haas, Jr., proposed an Adult Entertainment amendment to the Revere Zoning Ordinance. The 1993 Ordinance imposed regulations on various types of adult entertainment.[4]
Once T&D completed renovation, T&D revealed its intention to operate an adult video, book and paraphernalia retail store. Upon review, the Building Inspector denied T&D’s application for a sign permit and informed T&D that its proposed business use failed to conform with the new zoning ordinance requirements. After denial of its application, T&D filed an appeal to the Revere Board of Appeals. On October 26 and November 30, 1994 the Board held hearings and subsequently found that T&D’s adult video store failed to comply with zoning ordinance requirements.[5]
On January 30, 1995, Revere City Councilor Stephen Colarossi circulated a draft ordinance, which revised the 1993 Ordinance by eliminating certain restrictions. The City Council repealed the 1993 Ordinance and adopted the revised 1995 Ordinance. The 1995 Ordinance lowered the set-back requirements and revised the lot size restrictions. Other restrictions, however, remained in force.
Expert testimony indicated that the 1995 Ordinance essentially restricted adult entertainment venues to a single location, which was unsuitable for a variety of reasons. T&D filed for injunctive relief claiming that the zoning ordinance violated 42 U.S.C. §1983 and G.L.c. 12, §11H because it did not leave any alternative outlet for its speech. The court (Murphy, J.) permanently enjoined the City of Revere from enforcing its provisions, finding that the zoning ordinance was unconstitutional. In accordance with 42 U.S.C. §1988 and G.L.c. 12, §111, T&D filed this petition seeking attorneys fees and costs associated with the prosecution of its complaint against the City of Revere.
DISCUSSION
Section 1988 of 42 U.S.C. authorizes judges in their discretion to award reasonable attorneys fees to a prevailing party to any action to enforce a provision of §1983.[6] 42 U.S.C. §1988; Perini Corp. v. Comm'r of Revenue, 419 Mass. 763, 772, cert, denied, 516 U.S. 822 (1995). This statutoiy provision endeavors to promote civil rights enforcement and to deter violations of civil rights by encouraging private lawsuits against civil rights abuses. Lincoln St Realty Co. v. Green, 374 Mass. 630 (1978). The statute entitles the petitioner to an award for attorneys fees when the court finds that the petitioner is the prevailing party and the court exercises its discretionary authority to award fees in the petitioner’s favor. Draper v. Town Clerk of Greenfield, 384 Mass. 444 (1981), cert, denied sub. nom. Draper v. Prescott, 456 U.S. 947 (1982). For the purposes of §1988, the court deems the party a “prevailing party” when it “succeeds on any significant *450 issue in litigation which achieves some of the benefit the [parly] sought in bringing suit.” Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978).
The party applying for attorneys fees must first establish its status as the “prevailing party.” Draper, 384 Mass, at 452. The court considers the applicant the “prevailing party” if it “succeeds on any significant issue in litigation which achieves some of the benefit the [party] sought in bringing suit.” Id. at 453. Here, T&D satisfies its status as the prevailing party because this court permanently enjoined the City of Revere from enforcing its Adult Zoning Ordinance, which effectively enabled T&D to open its adult video store.

Denying the Petition Due to Its Outrageous and Unreasonable Claim

Once the plaintiff establishes its status as the prevailing party, as T&D does here, the court’s discretion to deny attorneys fees and costs is “extremely narrow.” Espino v. Besteiro, 708 F.2d 1002, 1005 (5th Cir. 1983). The court should award attorneys fees and costs, pursuant to §1988, as a matter of course unless special circumstances exist that would render the award unjust. Johnson v. Comm’r of Pub. Welfare, 419 Mass. 185, 191 (1994) (stating that a judge’s discretion to deny fees is limited and the prevailing party should ordinarily recover attorneys fees unless special circumstances render such award unjust).
The City of Revere argues that the court should use its discretion to deny T&D’s petition in its entirety because it reflects a total lack of billing judgment and is grossly excessive. In applying 42 U.S.C. §1988 for an award of attorneys fees and costs, the court has the discretion to deny an entire fee request if the fee request is “so exorbitant as to shock the conscience of the court ...” Sun Publ’g Co., Inc. v. Mecklenburg News, Inc., 823 F.2d 818, 819 (4th Cir. 1987). This extreme remedy seeks to curtail a prevailing party’s unethical practice of knowingly submitting an outrageously excessive fee petition as a negotiating strategem “in the hope that the court would award at least some, preferably high, percentage of the requested fee.” Fair Hous. Council of Greater Wash. v. Landow, 999 F.2d 92, 98 (4th Cir. 1993).
Federal courts have denied attorneys fee awards when the court deemed the prevailing party’s petition as excessive or egregious. See, e.g., Scham v. Dist. Courts Trying Criminal Cases, 148 F.3d 554 (5th Cir. 1998); Fair Hous. Council of Greater Wash, 999 F.2d at 92; Lewis v. Kendrick, 944 F.2d 949, 958 (1st Cir. 1991); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980). In these cases, the court was able to articulate special circumstances, which rendered the award unjust. The facts in the present case, however, do not warrant the court using its discretionary authority to deny attorneys fees because the application of the petitioners falls far short of a “special circumstance” contemplated by the “striking” cases.
The court distinguishes the case at bar from the proffered cases by highlighting important differences. In Scham, the court found that the prevailing party’s counsel’s status as a solo practitioner with one year experience neither justified his $350 per hour billing rate, nor explained his enhanced $750 per hour rate. Scham, 148 F.3d at 557. In contrast, T&D’s lead counsel, Attorney Glenn Alberich’s billing rate, ranging over the course of ten years from $250 to $400 per hour, is not an inordinate rate for a large Boston law firm employing attorneys who have twenty-five years of legal experience. Similarly, in Fair Hous. Council of Greater Wash., the court found that the prevailing party’s counsel failed to exclude fees attributable to unsuccessful claims and that counsel’s submitted time records were “woefully inadequate.” 999 F.2d at 97. Conversely, T&D’s counsel received a favorable disposition on its only claim. Additionally, T&D’s computer-generated time records, if anything, were overly replete with the minutest description of services rendered.
Considering that T&D hired experienced First Amendment counsel from large Boston law firms and who participated in nearly ten years of prolonged administrative proceedings and litigation, the court finds that the content of the petition for attorneys fees and costs neither rises to the level of a “special circumstance” requiring total disallowance, nor does it “shock the conscience of the court.” Sun Publ’g Co., Inc., 823 F.2d at 819.
The City of Revere alternatively argues that if the court opts not to use its discretion to deny T&D’s petition, this court should at least reduce the award. The court now analyzes the reasonableness of T&D’s petition to determine if it is a fair and just award.

Reducing the Amount Sought in the Petition

The City of Revere (“Revere”) first argues that this court should reduce the award because T&D’s attorneys failed adequately to justify their billable rates. To support its assertion, Revere cites Attorney Glenn Alberich’s alleged failure to explain his justification for increasing his hourly billing rate from $250 per hour to $400 per hour. Similarly, Revere contends that T&D failed to explain or justify hourly billing rates for other attorneys who worked on this case.
The fee applicant bears the burden of documenting the applicable hourly rate. Guckenberger v. Boston Univ., 8 F.Sup.2d 91, 107 (D.Mass. 1998) (citing Missouri v. Jenkins, 491 U.S. 274, 286-87 (1989)). Counsel requesting attorneys fees must establish that their billable rates are in conformity with community market rates. Student Pub. Interest Research Group v. AT&T Bell Lab., 842 F.2d 1436, 1450 (3d Cir. 1988). An attorney may establish the community market rate by simply submitting affidavits from a number of attorneys who live in the community and “possess comparable qualifications and skill.” Id.
*451 In the present case, T&D’s counsel submitted affidavits from Attorneys Anthony M. Doniger and Kenneth H. Tatarian establishing the community rate standard for civil rights and constitutional rights attorneys. Attorney Doniger stated that the prevailing rate in complex civil ligation cases for attorneys who have Attorney Alberich’s legal experience ranged from $375 to $500 per hour, while Attorney Tatarian stated that the prevailing rate, in 1994, ranged from $200 to $400 per hour. Countering, Revere cites case law indicating that $200 per hour is a reasonable rate. Martino v. Mass. Bay Transp. Auth., 230 F.Sup.2d 195, 205 (D.Mass. 2002).
Revere also argues that the billing record indicates that billable hours were both excessive and duplicative. Specifically, Revere contends that T&D attorneys billed for research hours in the preliminary injunction phase, summary judgment phase and trial phase which went far beyond what was necessary and appropriate for proper preparation of this case. Similarly, Revere contends that various counsel for T&D billed for the same services without explaining the necessity for its duplicity. Mindful of the need to revisit prior work after the long periods of dormancy of any complicated piece of civil litigation, and after an extensive review of the voluminous time records submitted by petitioners, the court nonetheless finds merit in Revere’s assertions that T&D unnecessarily billed for duplicative services. In making this finding, the court does not cast aspersion on the ethics of petitioners’ counsel, merely that there is a considerable element of unnecessary duplication in these time records, and that a substantial portion of such duplicative billing must be laid to the inefficiency of petitioners’ counsel.
The court extensively reviewed the billing records to determine when and where T&D’s counsel “double-billed” its services. Though the court’s document review identified many duplicative records, it is virtually impossible to reconcile every single disparity because ten years of litigation produced a voluminous record consisting of thousands of separate entries. The resources available to this court do not permit an examination and reconciliation, with absolute precision of every single disparate entry. It suffices to say that the court did its best.
The court’s methodology employed the so-called “lodestar” basis of fee calculation,[7] however, and weighed a number of judicially-indicated appropriate factors to determine a fair and just award for T&D’s counsel’s time and expense in litigating this action. In this regard, it is worthy to mention that the undersigned Associate Justice had substantial experience in the trial of civil matters as a partner in a major Boston law firm, practiced trial law in the Ciiy of Boston for some thirty years before his appointment to the bench, and thus has significant practical experience in the complexities of so-called “big firm” billing practices.

Lodestar Calculation

The amount of a fee award rests largely within the discretion of the trial judge. Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993) (finding that the amount of a reasonable attorneys fee, awarded on the basis of statutory authority, “is largely discretionary with the judge”); Linthicum v. Archambault 379 Mass. 381, 398 (1979). The award amount should, however, be “reasonable” and represent the fair market value of counsel’s time reasonably spent on the case. Torres v. Attorney Gen., 391 Mass. 1, 16 (1984). Courts sometimes refer to this measure of the fee award as the “lodestar calculation.” See, e.g., Connolly v. Harrelson, 33 F.Sup.2d 92, 95-96 (D.Mass. 1999) (discussing the “lode-star” calculation process). The court also has discretion to adjust the lodestar up or down, but must justify such only under compelling circumstances. Fontaine, 415 Mass, at 324; Draper, 384 Mass, at 456-57. Courts consider a combination of factors when determining the reasonable fair market value of services.[8] See, e.g., Linthicum, 379 Mass, at 390; Heller v. Silverbranch Constr. Corp., 376 Mass. 621 (1978).
Calculating reasonable attorneys fees in this fashion requires the court to identify the number of hours billed in the contemporaneous billing records for each attorney and paraprofessional entering time spent working on the case and then to apply a reasonable discount for any time deemed excessive or duplicative. Once the court determines the reasonable number of hours expended, the court simply multiplies those hours by a reasonable hourly rate to achieve the lodestar figure. Determining the reasonable hourly rate requires the court to find the prevailing hourly rate in Boston for persons with comparable skill, experience and reputation as the persons who worked on the case. Blum v. Stenson. 465 U.S. 886, 895 (1984). The court’s goal is to fashion an award equal to what the services were objectively worth in the so-called “legal marketplace,” as opposed to what other amount the prevailing party’s counsel may have billed. Heller, 376 Mass, at 629.
In applying the lodestar calculation, the court also considers the effect of Revere’s obstructionist conduct, which the court finds substantially contributed to T&D’s alleged accumulation of $1,209,585.33 in attorneys fees and costs. The court finds that Revere unduly prolonged this litigation by causing delays at various stages during litigation. It was patently obvious to the court that Revere was never interested in resolving this case through settlement or alternative dispute resolution, and that this attitude, politically engendered, obtained long after it was apparent that its actions in framing and attempting to enforce unconstitutional zoning regulations enacted for the sole purpose of “zoning out” T&D Video’s proposed use of its premises as an adult entertainment video and bookstore were patently illegal.
*452 Additionally, the nature of Revere’s constitutional violations contributed to T&D’s counsel’s difficult and prolonged involvement in the matter. Issues involving First Amendment civil rights are often complex and difficult to resolve against entrenched governmental opposition without the expenditure of prodigious amounts of legal services. Often, as a practical matter, the resources and expertise required to battle for constitutionally-based civil rights reside solely in the capacities, however inefficient, of large law firms, whose cost structures necessarily require premium billing rates.

Expert Fees

Revere argues that 42 U.S.C. §1988 and G.L.c. 12, §111 do not allow the prevailing party an award for expert fees. In relevant part, 42 U.S.C. §1988 permits an award for expert witness fees in excess of statutory limits in “any action or proceeding to enforce a provision of §1981 or §1981a. . .” As T&D brings this action pursuant to 42 U.S.C. §1983, the statutory provision allowing expert fees is not applicable to T&D’s federal claim.
As to T&D’s “state” claim, the provisions of the so-called Massachusetts Civil Rights Act do not explicitly permit an award of expert fees.[9] When a Massachusetts statute grants explicit cost-shifting authority, however, it raises a presumption that this court may award expert witness fees upon a successful Massachusetts Civil Rights Act action. Krewson v. City of Quincy, 74 F.3d 15, 19 (1st Cir. 1996) (citing Linthicum, 379 Mass, at 389). The court adopts this presumption.
Revere argues, pursuant to G.L.c. 12, §11H, that T&D’s state claim is not applicable because a violation of the Massachusetts Civil Rights Act occurs only when the plaintiff presents evidence of “threats, intimidation, or coercion.” G.L.c. 12, §11H. Attempting to enforce the zoning ordinance, Revere asserts, does not constitute a “threat, intimidation or coercion.”
Case law establishes, however, that G.L.c. 12, § 11H does not require actual or threatened force; economic coercion is sufficient. Buster v. George W. Moore, Inc., 438 Mass. 635, 648 (2003) (holding that a public university’s denial of student organization’s use of its facilities constituted a threat, intimidation or coercion). Here, Revere participated in pure economic coercion when it denied T&D the opportunity to operate a lawful business and forced it to enter a “scorched earth” campaign of legal vindication. Accordingly, G.L.c. 12, §11I entitles T&D to an award for expert fees, which this court incorporates in its final lodestar figure listed below.
In consideration of the time expended to resolve this matter, and after careful and exhaustive review of all the billing records and parties’ arguments, the court finds that a lodestar calculation of 3100 hours at the average hourly rate of $280, equaling a lodestar figure of $868,000 represents reasonable attorneys fees and costs for litigating this matter. The court has calculated the reasonable “expert fees” incurred in this matter to be in the sum of $47,027. Thus, the total award to petitioners’ counsel in the matter is $915,027.
ORDER
For the reasons stated herein, it is hereby ORDERED that the defendant City of Revere forthwith pay plaintiff T&D’s attorneys fees and costs in the amount of $915,027 as reasonably and necessarily incurred in the successful prosecution of this matter.

T&D Video, Inc. v. City of Revere & others, 423 Mass. 577 (1996) (affirming that the Superior Court judge did not abuse her discretion when she issued a preliminary injunction [3 Mass. L. Rptr. 427, Botsford, J.]).

Attorneys fees total $1,093,626.00; out of pocket expenses total $67,037.77; and expert fees total $48,921.56.

The regulations required that adult entertainment establishments could operate only by special permit in the General Industrial District and only if it satisfied certain size and location conditions.

During the proceedings, T&D commenced an action in Superior Court to exempt itself from the application of the Adult Use Ordinance.

In cases brought under 42 U.S.C. §1983, though the fee award language of §1988 states “the court, in its discretion, may allow the prevailing party ... a reasonable attorneys fee as part of the costs” awards in favor of prevailing civil rights plaintiffs are essentially obligatory. Gay Officers Action League v. Puerta Rico, 247 F.3d 288, 293 (1st Cir. 2001). Federal and state civil rights statutes both include parallel provisions for an award of attorneys fees and costs. 42 U.S.C. §1988; G.L.c. 12, §111. Unlike the discretionary language of 42 U.S.C. §1988, the language in the Massachusetts Civil Rights Act, G.L.c. 12, §111, mandates that the prevailing party receive an award for reasonable attorneys fees and costs. Davignon v. Clemmey, 176 F.Sup.2d 77, 94 (D.Mass. 2001).

The lodestar approach contemplates judicial ascertainment of the “number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate” as the starting point in constructing fee awards. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Among the other factors, the court considers 1) the time and labor required, the novelty and difficulty involved and the skill required to properly perform legal services; 2) the fee customarily charged in the locality for similar legal services; 3) the amount involved and results obtained; 4) time limitations; and 5) the experience, skill and reputation of the attorney. See, e.g., Scham, 148 F.3d at 559 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

In relevant part, G.L.c. 12, §11I states, “(a]ny person whose exercise ... of rights . .. has been interfered with . . . as described in section 11H . . . may institute and prosecute in his own name . . . [and the prevailing party] . . . shall be entitled to award of the costs of the litigation and reasonable attorneys fees in an amount to be fixed by the court.”