<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1757

                        RICHARD KOSTER,

                      Plaintiff, Appellee,

                               v.

                  TRANS WORLD AIRLINES, INC.,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Joseph L. Tauro, U.S. District Judge]

                      ____________________

                             Before

                     Boudin, Circuit Judge,

             John R. Gibson, Senior Circuit Judge,

                   and Lynch, Circuit Judge.

                     _____________________

   Joseph Baumgarten, with whom Proskauer, Rose, LLP, James R.
DeGiacomo, Judith K. Wyman and Roche, Carens & DeGiacomo, P.C. were
on brief, for appellant.
   Michael M. McArdle, with whom Earl D. Munroe and Munroe &
McArdle were on brief, for appellee.

                      ____________________

                         June 21, 1999
                      ____________________

        JOHN R. GIBSON, Senior Circuit Judge.  Trans World
Airlines furloughed forty-seven year old Richard Koster as part of
a 1994 work force reduction.  Koster brought suit, invoking
diversity jurisdiction, and a jury determined that TWA had engaged
in illegal age discrimination under Massachusetts law, and awarded
Koster $1,000,000 in damages.  The district court doubled the
damages pursuant to a Massachusetts statute and awarded prejudgment
interest and attorneys' fees.  TWA argues the district court erred
in these latter rulings and (1) by denying its motion for a
directed verdict and for judgment as a matter of law; (2) in the
admission of evidence; and (3) by refusing a requested supplemental
jury instruction.  We affirm the jury's verdict and award of
attorneys' fees, but reverse the award of damages and remand the
case for further proceedings on the issue of damages.
        TWA hired Koster in 1965, and he initially worked at
John F. Kennedy Airport in New York.  He was reassigned to Logan
Airport in Boston in 1977, and employed in various supervisory
positions until his furlough in August 1994.  Koster's last
position was Supervisor, Ground Operations.  He was responsible for
Logan's garage, mail, air freight, dining, commissary and store
areas.  He earned $40,000 per year.  TWA consistently promoted
Koster and also asked him to take on special assignments when
problems arose.  Koster's performance evaluations consistently
described him as an excellent employee.
        In response to TWA's financial difficulties over the last
decade, TWA has instituted pay cuts, reductions in force, and
restructurings.
        In August 1994, TWA's senior management asked Gordon
Humpherys, the station manager for Logan Airport, to implement a
reduction in force.  Humpherys was responsible for TWA's entire
station operations at Logan, and Koster reported directly to him.  
Specifically, TWA management told Humpherys to reduce six
supervisor positions to four.
        At trial, Humpherys explained that the reduction in force
would require the remaining four supervisors to do the work
formerly done by six.  Thus, his "foremost concern" was to retain
those supervisors "who would provide the most productivity" and be
best able to run the operation with a minimum of supervision and
direction.  Humpherys ultimately elected to keep Kathy Hobbs (age
44),  Glenn Hutmire (age 56), Henry Sledz (age 49), and Robinanne
Stancavage (age 25).  He selected Koster (age 49) and  Robert
Spencer (age 48) for furlough.
        Under TWA's Policies and Procedures, a management
employee selected for furlough remains eligible for recall for a
five-year period.  The employee may also elect to take a position
equivalent to the last position he or she held before entering
management.  Koster was entitled to take a position as a
transportation agent, which would have paid $26,000 per year.   He
elected, however, to take the furlough, hoping he would be
recalled.  Koster unsuccessfully applied for several openings at
TWA, but in the spring of 1995, Koster elected early retirement in
order to obtain his retirement benefits.
        Following his decision to retire, Koster opened up a
Minuteman printing franchise.  At the time of trial, Koster had yet
to take a salary.  Koster estimated his back-pay damages at
$159,175, and total losses for future pay at $120,819.  After the
furlough, Koster suffered from anxiety  and had trouble sleeping at
night.  He suffered from heartburn and had to take antacid pills on
a regular basis.
        Koster filed suit against TWA alleging age discrimination
in violation of the Massachusetts Fair Employment Practices Act,
Mass. Gen. Laws ch. 151B, and breach of contract.  The district
court dismissed the contract claim at the close of Koster's
evidence, and submitted the age claim to the jury.  The jury
returned a verdict for Koster, awarding $1,000,000.  The court
awarded $155,807.50 in attorneys' fees, prejudgment interest on all
but the front-pay portion of the damage award, and an additional
$1,000,000 pursuant to Mass. Gen. Laws ch. 151B,  9, finding that
TWA acted with knowledge or reason to know that it violated the
provisions of Mass. Gen. Laws ch. 151B,  4.  TWA appeals.
                               I.
        TWA first argues that the district court erred by denying
its motion for judgment as a matter of law because Koster failed
to:  (1) establish a prima facie case of age discrimination; and
(2)show that TWA's articulated non-discriminatory reasons for his
furlough were pretextual.
        We review de novo the trial court's decision to deny a
motion for judgment as a matter of law.  We view the evidence in
the light most favorable to Koster, drawing all reasonable
inferences in his favor.  See Snchez v. Puerto Rico Oil Co., 37
F.3d 712, 716 (1st Cir. 1994).  We "may reverse the denial of such
a motion only if reasonable persons could not have reached the
conclusion that the jury embraced."  Id.
        In discrimination cases arising under Chapter 151B of the
Massachusetts law, courts have traditionally applied the three-
stage order of proof articulated in McDonnell Douglas Corporation
v. Green, 411 U.S. 792, 802-05 (1973).  See Lehman v. Prudential
Ins. Co., 74 F.3d 323, 327-28 (1st Cir. 1996); Blare v. Husky
Injection Molding Sys., 646 N.E.2d 111, 114-15 (Mass. 1995).  Under
that standard, a plaintiff who was terminated as part of a
reduction in force can generally establish a prima face case of
discrimination by showing that (1) he was at least forty years old;
(2) he met the employer's legitimate job performance expectations;
(3) he experienced adverse employment action; and (4) the employer
did not treat age neutrally, or that younger persons were retained
in the same position.  See LeBlanc v. Great American Ins. Co., 6
F.3d 836, 842 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994).
        If the employee establishes a prima facie case, there is
a presumption that the employer engaged in impermissible age
discrimination.  See Kelley v. Airborne Freight Corp., 140 F.3d
335, 348 (1st Cir.), cert. denied, 119 S. Ct. 341 (1998).  To rebut
this presumption, the employer must articulate a legitimate non-
discriminatory reason for the employee's termination.  See id.  
This entails only a burden of production; the burden of persuasion
of discrimination remains with the employee.  See id.  Once the
employer has proffered a legitimate, non-discriminatory reason for
its adverse employment decision, the presumption generated by the
employee's prima facie case disappears, and the employee then has
the burden to prove that the reason advanced by the employer for
the adverse employment action constituted a mere pretext for
unlawful age discrimination.  See id.  Age discrimination
plaintiffs in Massachusetts have a lesser burden than those under
federal law.  Massachusetts law requires the employee to show only
pretext, whereas under First Circuit ADEA law, the mere showing of
pretext does not entitle plaintiff to a verdict.  See Mullin v.  
Raytheon Co., 164 F.3d 696, 699 (1st Cir. 1999), pet. for cert.
filed, May 5, 1999 (No. 98-1779); Kelley,140 F.3d at 348-49; Blare,
646 N.E.2d at 444-45.  Therefore, a plaintiff is entitled to
judgment on his claim if he establishes a prima facie case and
persuades the trier of fact that the employer's articulated
justification is pretextual.  See Kelley, 140 F.3d at 349.
                              -A-.
        TWA concedes that Koster was in the protected age group
and suffered an adverse employment action.  TWA argues, however,
that Koster did not establish a prima facie case of age
discrimination because he did not prove that he was replaced in his
position as Supervisor, Ground Operations, that TWA retained
younger employees in the same position, or that TWA's selection
process was not age neutral.
        TWA failed to preserve its challenge to the sufficiency
of Koster's prima facie case.  TWA's motions for directed verdict,
made at the close of Koster's evidence and at the close of all of
the evidence, challenged Koster's failure to prove pretext, not his
failure to prove a prima face case.  "Appellate review may be
obtained only on the specific grounds stated in the motion for
directed verdict."  See Wells Real Estate, Inc. v. Greater Lowell
Bd. of Realtors, 850 F.2d 803, 810 (1st Cir.), cert. denied, 488
U.S. 955 (1988).
        Moreover, we are persuaded that Koster established a
prima facie case of age discrimination.  Mesnick v. General Elec.
Co., 950 F.2d 816, 823 (1st Cir. 1991)(burden is "not onerous.").  
In an answer to a special interrogatory, the jury found that Koster
established a prima facie case of age discrimination.  This finding
is well supported by the evidence.  Although no one took over
Koster's exact job, his duties were subsumed by other employees,
some of whom were younger, one substantially younger, than him.  In
a reduction in force, a prima facie case requires only that Koster
show that TWA did not treat age neutrally in deciding who to
furlough.  See Hidalgo v. Overseas  Condado Ins. Agencies, Inc.,
120 F.3d 328, 333 (1st Cir. 1997).  Thus, sufficient evidence
existed to allow a reasonable jury to find that Koster met his
burden of proving a prima facie case of discrimination.
                              -B-.
        TWA next argues that Koster failed to present sufficient
evidence from which a jury could reasonably infer that the reasons
for TWA's discharge were a pretext for age discrimination.  TWA
argues that Koster failed to show that TWA did not have a
legitimate need to reduce its work force at Logan, and furthermore,
did not address the fact that three of the four retained
supervisors were also in the protected age class.
        Koster does not argue, however, that the reduction in
force itself was pretextual. Instead, Koster relies on evidence
that TWA's stated reasons for selecting him for furlough were
false.  In answers to special interrogatories, the jury
specifically found that TWA "had not presented credible evidence of
a legitimate business purpose for the furloughing of Mr. Koster in
August, 1994" and that "Koster has proven that the reason given by
[TWA] for his furlough in August 1994 was a pretext for age
discrimination."  The jury could reasonably make this finding of
pretext from the circumstances surrounding Humpherys's selection
process.  Humpherys testified that he selected Koster for furlough
because Humpherys "didn't think he had sufficient people skills,
[and] his attitude was not sufficiently good for him to be able to
manage the operations on a regular basis."  Other witnesses
testified, however, that Koster had a very good relationship with
employees, and that he was knowledgeable, very professional, and a
hard worker.  Hutmire, one of the retained supervisors, testified
that Koster was a leader and "a workaholic."  Koster had perfect
attendance record in fourteen out of seventeen years.    Koster had
been designated acting station manager to fill in for Humpherys on
at least two occasions.
        In addition, Humpherys testified that in evaluating the
supervisors he ranked Koster the "lowest performer."  Humpherys
admitted, however, that Koster got the job done and that the
performance of his crews was satisfactory.  He ranked Koster even
below Spencer who he testified was "constantly late" and "not a
strong supervisor." Humpherys ranked twenty-five year old
Stancavage as the second best supervisor of the group, even though
she had only three months of supervisory experience.  Koster hired
Stancavage in 1989 as a customer service agent.  She quit on
November 15, 1992, and  returned to TWA in June of 1993 as a part-
time customer service agent.  On January 24, 1994, she was promoted
to a full-time employee as a customer service agent in charge.  On
April 25, 1994, she became a Supervisor, Ground Operations.  There
was evidence that Stancavage had a full scholarship at M.I.T. and
was working for TWA only until she could return to school.  
Humpherys's primary explanation as to why he decided to retain
Stancavage over Koster was that she was  "enormously creative" and
"very enthusiastic."
        After comparing the qualifications of Koster and
Stancavage, there is abundant evidence supporting the
conclusion that a reasonable employer would have found Koster
significantly more qualified than Stancavage, a twenty-five year
old employee with three months of supervisory experience.  The jury
could also reasonably conclude that Koster fit the selection
criteria established by Humpherys and that Stancavage did not.  
Koster obviously made a long-term commitment to working for TWA,
while evidence suggested that Stancavage planned to work for TWA
until she returned to school.  "[A]n employer's asserted strong
reliance on subjective feelings about candidates may mask
discrimination."  Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1297
(D.C. Cir. 1998)("enthusiasm").  That three of the four retained
supervisors were in the protected age class is of little importance
because Koster need only show that TWA furloughed him because of
his age.  See O'Connor v. Consolidated Coin Caterers Corp., 517
U.S. 308, 312-13 (1996). Moreover, Stancavage is substantially
younger than Koster.  See id. at 313.  The jury's disbelief of the  
reasons set forth by TWA (particularly if the disbelief is
accompanied by a suspicion of mendacity) may, together with the
elements of the prima facie case, permit the jury to infer the
ultimate fact of intentional discrimination.  See St. Mary's Honor
Ctr. v. Hicks, 509 U.S. 502, 511 (1993); Aka, 156 F.3d at 1294
(discrimination can be inferred from evidence that employer
selected a significantly less qualified candidate).  Koster
established pretext by showing that TWA's proffered explanation is
unworthy of credence.  The court did not err in denying TWA's
motion for judgment as a matter of law.
                              II.
        TWA also argues that the district court's admitting a
section of the TWA Management Policy and Procedure Manual and  
allowing Koster to testify about other employees who had left TWA
was reversible error.
                              -A.-
        Section 10.66.01 of the Manual applied to salaried
personnel.  The policy section of the provision stated:  
"[s]alaried seniority will determine the order of force reduction
and displacements of Salaried employees," and stated that in a
reduction in force, employees should be let go in the following
order:  contingent employees, probationary employees, regular part-
time or full-time employees.
          TWA contends that this provision applied only to
salaried employees and did not apply to Koster as a management
employee, and the district court abused its discretion in allowing
the jury to consider this evidence.
        We review evidentiary decisions of the trial court for
abuse of discretion.  Nieves-Villanueva v. Soto-Rivera, 133 F.3d
92, 98 (1st Cir. 1997).
        The district court did not abuse its discretion in
admitting section 10.66.01 of the manual, or in refusing to give a
curative instruction.  Although TWA argues that this provision does
not apply to Koster because he was "management" and not "salaried,"
there was evidence that this provision applied to Koster.  First,
Koster's furlough letter from TWA referred Koster to section 10.66
for "a statement of his rights with respect to his seniority."   
Second, Koster testified that he thought that the provision applied
to all salaried management employees other than contract (union)
labor.  He explained that his employee records showed that he was
subject to a 14% pay cut in 1986 applicable to "salaried"
employees, and he believed the provision applied to him.  Thus, a
question of fact existed as to whether the provision applied to
Koster, and the court did not abuse its discretion in admitting the
provision, or refusing to instruct the jury that the section did
not apply to Koster.  See Fed. R. Evid 104(b).
                              -B-.
        TWA further argues that the district court erred in
allowing Koster to testify about TWA's treatment of other  
employees and in denying TWA's request for a supplemental jury
instruction advising the jury that it could not consider such
anecdotal evidence.  TWA contends that the evidence lacked
foundation, and that there was no nexus between the other
terminations and Koster's termination.  TWA further argues that
allowing the evidence contradicted the district court's pre-trial
ruling that Koster's "other employee" evidence was not relevant.
        In a pre-trial order, the court granted TWA's motion in
limine prohibiting Koster from calling six former employees to
testify about how TWA furloughed them during other work force
reductions.  The district court reasoned that such testimony was
"collateral," and would require the court to examine "the
circumstances of each individual firing."
        At trial, Koster testified that during previous
reductions in force, he knew other employees over age fifty who TWA
had released or furloughed or who had retired.  Specifically,
Koster testified that he knew over one hundred front-line
management employees during his career, and only one retired at age
62 or older.  Koster gave examples of TWA employees he had known
who were over fifty and who had lost their jobs.   
        Koster's testimony did not violate the pre-trial order.  
The trial court ruling prohibited Koster from calling collateral
witnesses to testify about the circumstances surrounding the
furloughs of older supervisors.  The order did not prohibit Koster
from testifying about his own observations of what happened to
other employees at TWA.  During trial, the court clarified that it
would allow Koster to testify about what he perceived regarding the
reorganizations.
        TWA argues that the anecdotal testimony is not indicative
of age discrimination or of pretext and should not have been
admitted.  TWA portrays the evidence as irrelevant and highly
prejudicial, warranting reversal.
        In Goldman v. First National Bank,985 F.2d 1113, 1119-21
(1st Cir. 1993), we held that plaintiff's anecdotal evidence was
insufficient to form the basis for a finding of age animus.  In
Goldman, the employee had presented the affidavits of eight other
employees who stated that they were the oldest employee in their
unit and had been performing adequately when their employer
dismissed them pursuant to a reduction in force.  Id. at 1119.  We
held that "evidence of this sort does little more than corroborate
what was undisputed:  that members of the protected class were
terminated as part of the reduction in force."  Id. (internal
quotations omitted).
        Contrary to TWA's argument, Goldman did not hold that
anecdotal evidence is not admissible and always prejudicial.
Goldman simply held that the anecdotal evidence presented could
not, by itself, establish age animus.  Id. at 1119.  Accord
Shorette v. Rite Aid Inc., 155 F.3d 8, 16-17 (1st Cir. 1998);  
LeBlanc, 6 F.3d at 847.  Indeed, we recently observed that "while
proof of a general atmosphere of discrimination is not the
equivalent of proof of discrimination . . . it may add color to an
employer's decisionmaking process."  Brennan v. GTE Gov't Sys.
Corp., 150 F.3d 21, 28 (1st Cir. 1998)(internal quotations
omitted).  Here, as in Brennan, Koster's  anecdotal evidence was
just a part of his age discrimination picture.  The admissibility
of Koster's anecdotal evidence was a judgment call, as was the
refusal of the requested instruction.  Exclusion would not have
been an abuse of discretion, but neither was admission.
                              III.
        TWA argues the district court abused its discretion in
denying TWA's motion for remittitur or, in the alternative, a new
trial on damages.  See Gasperini v. Center for Humanities, Inc.,
518 U.S. 415, 433 (1996) (abuse of discretion standard).  TWA,
however, bears a heavy burden of showing that an award is "grossly
excessive, inordinate, shocking to the conscience of the court, or
so high that it would be a denial of justice to permit it to
stand."  Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480,
1484 (1st Cir. 1994).  We will not disturb an award of damages
because it is extremely generous or because we think the damages
are considerably less.  See id.  We will only reverse an award if
it is so grossly disproportionate to any injury established by the
evidence as to be unconscionable as a matter of law.  See id.;
Clausen v. Sea-3, Inc., 21 F.3d 1181, 1198 (1st Cir. 1998)
(remittitur appropriate only when verdict "so exorbitant").
        TWA does not attack the entire damage award.  TWA first
takes issue with the damages for emotional distress.  Koster's  
evidence of lost wages (back pay and front pay) amounted to
approximately $284,000; thus, TWA argues that the balance of
$716,000 represents damages for emotional distress and is
excessive.  Koster responds that the $716,000 does not necessarily
constitute emotional damages, and the jury could have easily
decided that Koster's total losses for front pay far exceeded the
$120,819 he testified about.
        Koster's testimony, however, as to back pay and future
pay was quite specific.  His attorney in closing argument
reiterated that his economic damages totaled $283,995.  In the face
of such firm evidence of economic damage, we cannot say that the
jury could reasonably conclude Koster was damaged above and beyond
what he said his damages were.  See Kelley, 140 F.3d at 355-56.
        Although determining whether damages for emotional
distress are excessive is difficult, such damages are not immune
from review.  See LaBonte, 678 N.E.2d at 861-62.  The Massachusetts
Supreme Judicial Court held that a $550,000 award for emotional
distress was excessive in LaBonte.  In that case, a law firm fired
an employee after the employee developed multiple sclerosis.  Id.
at 855-56.  There was evidence that the employee was depressed and
that "his confidence was shattered" by the termination.  Id. at
861.  Although the court acknowledged that the employee suffered
from depression and sought counseling, it nevertheless concluded
that the $550,000 award for emotional distress was excessive.  Id.
at 861-62.  The court reasoned that the damage award was grossly
disproportionate to the evidence of injury.  The plaintiff had not
been hospitalized and never took medication to combat his
depression, and his depression abated after he found a new job.  
Id.  The court concluded that his depression, while real and
significant, did not rise to the level awarded by the jury.  Id.  
The case was remanded to the trial court to determine the amount of
remittitur.
        Although testimony from a mental health expert is not
required to sustain an award for emotional distress, the absence of
such evidence is useful in comparing the injury to the award of
damages.  For example, in Snchez, a jury awarded $150,000 in
emotional distress damages to a plaintiff in an age discrimination
case.  37 F.3d at 723.  The district court reduced the award to
$37,500, and we affirmed.  Id. at 723, 726.  The plaintiff in
Snchez testified about the humiliation he suffered from losing his
job and filing for bankruptcy.  We indicated that although
emotional damages are warranted even without medical or psychiatric
evidence, the lack of such evidence is relevant to the amount of
award.  Id. at 724 n.13.
        One of the highest emotional distress judgments in
Massachusetts was awarded in Westinghouse Electric Supply Corp. v.  
Massachusetts Commission Against Discrimination, No. CIV. A. 97-
4267E, 1999 WL 140492 (Mass. Dist. Ct. Mar. 5, 1999).  In that
case, Westinghouse fired an experienced salesman after he developed
Crohn's disease.  Id. at *1-2.  The claimant suffered from severe
depression, insomnia, constant diarrhea, and stomach pain, and the
Massachusetts Commission awarded him $250,000 for emotional
distress.  Id. at *3.  The Massachusetts court affirmed the award,
concluding it was "within the realm of other emotional distress
awards, and that "the exacerbation of his illness and consequent
termination may support a higher award of damages."  Id. at *10-11,
n. 16 and 17.  Although the evidence of injury was much more severe
in Westinghouse, the claimant received about a half a million
dollars less than Koster.  See id. at *10 (humiliation, depression,
inability to eat, constant diarrhea and pain).  In Westinghouse,
there was no evidence that the claimant found another job as Koster
did.
        Despite the strict standard of review, courts have
ordered  remittiturs in a number of cases.  See, e.g., Fontaine v.  
Ebtec Corp., 613 N.E.2d 881, 883-84 & n.3 (Mass. 1993) (emotional
distress damages reduced from $80,000 to $25,000); Powers v. H.B.
Smith Co., 679 N.E.2d at 252, 254 (Mass. App. Ct. 1997)(damage
award (front-pay and emotional distress) reduced from $750,000 to
$350,000); Kelley, 140 F.3d at 345 (emotional distress damages
reduced from $250,000 to $150,000); United States v. Snchez, 37
F.3d at 723 (emotional distress damages awarded under Puerto Rico
statute reduced from $150,000 to $37,500).  Accord Hetzel v.  
County of Prince William, 89 F.3d 169, 173 (4th Cir. 1996)(award of
$500,000 grossly excessive), cert. denied, 519 U.S. 1028 (1996);
see also Brownlie v. Kanzaki Specialty Papers, Inc., 691 N.E.2d
953, 955 (Mass. App. Ct. 1998) (emotional distress damages of
$50,000).
        There is no doubt that Koster suffered emotionally
following his furlough.  Koster had worked for TWA for over twenty-
five years and was devoted to his job.  His seniority status at TWA
allowed him job and vacation flexibility, and he found his work
extremely gratifying.  After the furlough, Koster had trouble
sleeping and was anxious.  A vacation to Hawaii "did not go well."  
He took antacid pills on a regular basis.  His new job requires him
to work more, and he earns less.  His family life has suffered.  
His wife has had to return to work, and he is not able to
participate as fully in the activities of his four children.  
Following LaBonte, however, we believe the award is grossly
disproportionate to the evidence of emotional distress.  There was
no evidence that Koster ever sought medical treatment or suffered
any long-term depression or incapacitation.  Koster was able to
open up a business of his own and anticipates taking a salary
within two years.  Although we acknowledge that the furlough of
Koster was particularly painful because of his devotion to TWA, we
also recognize that he could have remained with TWA, albeit in a
different job with a reduced salary.
        Accordingly, we conclude that the evidence of injury was
grossly disproportionate to the award for emotional distress, and
is excessive as a matter of law.  We recognize that we have the
option of selecting a reduced damages figure ourselves based on the
evidence adduced at trial, or remanding the case to the district
court for a determination of damages.  See, e.g., Anthony v. GMD
Airline Services, Inc., 17 F.3d 490, 495 (1st Cir. 1994);   
Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir.
1988).
        Although we recognize the esoteric nature of damages for
emotional distress, in view of the fact that the district court
denied TWA's motion for a remittitur, we think the best course is
to follow the "maximum recovery rule" authorized by this circuit.  
See id.  Under that rule, we condition our ruling that a new trial
on damages is appropriate on Koster's declining to remit our
determination of Koster's damages.  After our careful review of the
record and thoughtful consideration of other cases, we believe the
evidence of emotional distress would support a maximum recovery of
emotional damages of $250,000.  We believe that amount represents
the highest amount of damages for emotional distress for which
there is adequate evidentiary support.  We thus grant a new trial
on the issue of emotional damages only, and condition our order on
Koster's declining to remit $466,000 of the total amount awarded by
the jury.
                              IV.
        TWA argues the trial court erred in awarding  Koster  
double damages.  TWA contends that Chapter 151b requires the court
to make a specific finding to warrant the imposition of double
damages.  TWA speculates that the district court "may have
construed" the double damages provision as mandatory, not
discretionary.
        Following the jury's verdict, the district court simply
stated:  "Okay.  The issue now is whether I am going to double the
award.  And I am.  So, I will make ... a finding that I think it is
appropriate to double the jury award.  And I will do it."  The
court's May 18, 1998, order tracked the statutory language of Mass.
Gen. Laws ch. 151B,  9.  TWA states that Brownlie, 691 N.E.2d at
962, requires the district court to make specific findings that the
employer knew that the discriminatory act violated the age
discrimination law.  Although the court's findings in Brownlie were
much more specific than the court here, we are convinced that the
specificity was gratuitous and not required by the statute.
        Neither the statute nor the relevant case law requires
that the district court do anything more than enter a finding that
the employer acted with knowledge or reason to know that it
violated the anti-discrimination statute.  See Brownlie, 691 N.E.2d
at 962.  See also Kelley, 140 F.3d at 345 (multiplying damages by
2.25).  The statute simply requires a finding that the employer
satisfied the knowledge element of the statute.
        Although the district court did not provide a detailed
analysis supporting its finding, the judge affirmatively found that
it was appropriate to double the damage award.  This statement is
easily translated into a finding, supported by the record, that TWA
acted with knowledge or reason to know.  The evidence of
Humpherys's explanation for selecting Koster for furlough was not
credible. TWA's vice president of employee relations, Thibaudeau,
testified about TWA's policy prohibiting age discrimination, and
about how the policy was communicated to all managers.  This
evidence supports the finding that TWA acted with knowledge of its
violation of Massachusetts law.
        TWA also suggests that the district court "may" have
thought double damages were mandatory.  TWA refers us to the
multiple damage provision of the consumer protection law, which
courts have recognized requires more than a "knowing violation,"
despite the statutory language which suggests a less rigorous
standard.  See Cambridge Plating Co. v. NAPCO, Inc., 85 F.3d 752,
770 (1st Cir. 1996).  First, it is obvious from the court's finding
that it only considered the doubling mandatory if TWA's conduct met
the standard of knowledge required by the statute.  Fontaine
instructs that double damages are mandatory if the knowledge
standard of the statute is met, and that triple damages are
discretionary.  See 613 N.E.2d at 322 ("a certain recovery of at
least double damages"). Although the language of the provision in
the consumer protection statute is similar, none of the cases under
the age discrimination statute suggest that the knowledge
requirement is higher than that suggested by the statute.  See,
e.g., Brownlie, 691 N.E.2d at 962;  cf. Cambridge Plating, 85 F.3d
at 770-771.  The court did not err in awarding double damages.
                               V.
        TWA argues that the attorneys' fee award of $155,807.50
is excessive.  Our review of the attorneys' fee award is governed
by Massachusetts Law.  Krewson v. City of Quincy, 74 F.3d 15, 17
(1st Cir. 1996).
        The amount of a reasonable attorneys' fee, awarded on the
basis of statutory authority, is largely discretionary.  See
Fontaine, 613 N.E.2d at 890.
        TWA argues that the fee should be vacated because the
court abused its discretion in awarding Koster his full attorneys'
fees.  TWA contends that the case did not warrant the participation
of three attorneys, and the court should have reduced the award to
take into account that Koster lost on his breach of contract claim.
        The district court, however, determined that the fees
were reasonable.  The judge stated:
                     Very frankly, I find the hours reasonable,
          the amount of time spent.  The fact that
          there were three lawyers on one side and
          two on the other side, I don't find
          disproportionate.  It is probably fair,
          especially that you, Mr. DeGiacomo, are
          one of the most experienced and highly
          regarded trial lawyers in the city.  You
          could almost argue that it takes three
          against one, that three against one makes
          it fair.

        TWA does not challenge the billing rate of the attorneys
nor does it suggest that the time was duplicative.  It simply
argues that "this was not a case warranting the investment of three
attorneys."
        We find no abuse of discretion in allowing recovery for
the time spent by three attorneys.  TWA does not suggest the time
spent by three attorneys was duplicative, just that it was
unnecessary.  After consideration, the district court rejected this
argument.  Counsel's time spent pursuing unsuccessful claims,
however, is generally non-compensable "unless it can be shown that
the [unsuccessful and successful] claims were interconnected."  
Krewson, 74 F.3d at 19.  "Interconnection" can be found when the
"claims include[] a common core of facts or were based on related
legal theories."  Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir.
1992) (quotations omitted).  Although it may be true that Koster's
breach of contract and discrimination claims arose out of the same
cluster of facts, we need not decide this question because it is
the fee target's burden to show a basis for segregability.  See id.
at 941.  TWA did not meet this burden either before the district
court or this court.
        We affirm the judgment of the district court except for
the award of damages.  We order a new trial on the issue of
emotional damages only if Koster decides not to remit $932,000
(plus any interest accrued).

</body>

</html>