Agnes, A.J.
1. Introduction
This is a civil action in which the plaintiffs (Snow-dens) allege that the defendant Chase Manhattan Mortgage Company (Chase) and company officer violated the law by engaging in unfair and deceptive acts and practices. See G.L.c. 93A, §§2(a) and 9. Plaintiffs concede that they were in default on their mortgage and that they received a timely notice that Chase intended to exercise its power of sale and foreclose on their home located at at 1028 Main Street, Athol, Massachusetts. The Plaintiffs’ claim is that the defendants violated the law by refusing to postpone an auction of their home in the face of evidence that plaintiffs had obtained a willing and financially capable buyer who had signed an offer sheet for the property for a price that would have resulted in full satisfaction to the defendants of the plaintiffs’ obligation under the note. The plaintiffs request a declaration of their rights and damages, including an award of attorneys fees.[1] Defendant Chase has moved for summary judgment pursuant to Mass.R-Civ.P. 56 on grounds that they are entitled to relief as a matter of law on the basis of the fact that (1) the plaintiffs’ were in default and (2) Chase complied with the statutes regulating the exercise of the power of sale under a mortgage.
2. Background
There is no dispute about the basic facts. On or about October 29, 1999 the Snowdens gave a mortgage on the property at 1208 Main St. Athol, Massachusetts to Sherwood Mortgage Group Inc. (Sherwood) to secure a note in the amount of $95,215.00. On October 29, 1999, Sherwood assigned the note and mortgage to First Union Mortgage Corporation who assigned the note and mortgage to Chase on July 31, 2000. As a result of the Snowdens’ failure to make payments, the mortgage fell into default. The default resulted from the plaintiff Kenny L. Snowden losing his job due to an unanticipated mass lay off at the Omnirel Corporation where he worked as an electronics component assembly technician. He apparently secured employment thereafter, but again lost his job when that company was sold. On October 4, 2002, Chase commenced foreclosure proceedings and eventually scheduled a foreclosure auction for December 19, 2002. The plaintiffs received timely notice that the mortgagee intended to exercise its power of sale under the mortgage by conducting a public auction. The plaintiffs immediately took steps to protect their interests and avoid a foreclosure by engaging the services of a Real Estate firm, Godin Real Estate, in order to sell the home.
On December 18, 2002, the day before the auction was to take place, Mrs. Snowden contacted Chase’s attorney and stated that she had a buyer for the property. At this time, Mrs. Snowden requested that the auction be postponed while she secured the buyer. Late in the day on December 18, 2002, the Snowdens faxed a copy of an Offer to Purchase the plaintiffs’ home for $155,000 (signed by the prospective buyer and by the plaintiffs) to Chase’s attorney and to Chase at the attorney’s request. See appendix 7 to the joint affidavit of the plaintiffs.[2] The offer was accompanied by a deposit paid into escrow by the prospective buyer, and there was no contingency for financing. Plaintiff Lynn M. Snowden called the law firm representing the defendant late in the day to confirm receipt of the fax and was informed that an accepted offer alone was not sufficient and that proof that the buyer was actually able to purchase the property was required. An additional fax was sent to the law firm indicating that the person buying the home of the prospective buyer was approved for a mortgage loan in an amount sufficient to enable him to make the purchase.
On December 19, 2002, Chase and its attorneys “reviewed”[3] the Offer to Purchase as well as the request to postpone the sale for several weeks, and decided to proceed with the auction scheduled to take place that afternoon. At the time and place of the auction, Mr. Snowden again requested a postponement to allow his buyer to close on the property; this request was again refused. The foreclosure auction was held at 3:00 PM on December 19, 2002 and the property was sold to the high bidder, Mel Thomas. *36 Thereafter, the prospective buyer found by the plaintiffs reduced his offer to $140,000. After denial of the plaintiffs request for a preliminary injunction, the property was conveyed to Mel Thomas by means of a foreclosure deed on February 14,2003.[4] The plaintiffs seek in damages the difference between the original offer to purchase ($155,000) and the lower offer that was made after the foreclosure ($140,000).
3. Discussion
1. Standard for Summary Judgment.
Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56. If there are facts in dispute, they are consequential with respect to summary judgment only if they have a material bearing on the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). “If the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Actions to recovery founded upon promissory notes are particularly appropriate to disposition on a motion for summary judgment. United States Trust Co. of New York v. Herriott, 10 Mass.App.Ct. 313, 320 (1980). Our law also provides that “summary judgment, when appropriate, may be rendered against the moving party.” Mass.R.Civ.P. 56(c).
2. Mortgagee’s Duty of Good Faith, Diligence and Fair Dealing.
In Williams v. Resolution GGF OY, 417 Mass. 377, 382-83 (1994), the Supreme Judicial Court observed that “(t]he law governing a mortgagee’s responsibility to the mortgagor in the exercise of a power of sale is relatively straightforward. The mortgagee ‘must act in good faith and must use reasonable diligence to protect the interests of the mortgagor. The mortgagee’s duty is more exacting when it becomes the buyer of the properly. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. Consistent with these requirements, the mortgagee has a duty to obtain for the properly as large a price as possible” (citations and internal quotations omitted). As Chief Justice Rugg observed in Sandler v. Silk, 292 Mass. 493, 496 (1935), “(t]he mortgagee is a trustee for the benefit of all persons interested.” See also Taylor v. Weingartner, 233 Mass. 243, 247 (1916) (“The defendant in executing the power [of sale] was bound to exercise the utmost good faith for the protection of the rights of the owner of the equiiy of redemption . . .”).
It is true, as the defendant points out, that the plaintiffs did not bring a prospective buyer to the attention of the defendants until the very last moment.[5] And, there is nothing in the record before me to suggest that the defendant did not comply with the statutes governing foreclosure proceedings and sales. Thus, the defendant relies on the observation by the Appeals Court in Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 286 (1994) (citations omitted), that “[i]f the statutory norms found in G.L.c. 244, §§1117B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duly of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee’s conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process.”
However, in considering a claim for damages under G.L.c. 93A, §9, it is important to bear in mind what the Supreme Judicial Court stated in Kattar v. Demoulas, 433 Mass. 1, 13-14 (2000):
Chapter 93A is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights. The relief available under c. 93A is sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action. It mak[es] conduct unlawful which was not unlawful under the common law or any prior statute. Thus, a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition.
This is simply a new case for an old proposition: where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor, an action will lie . . .
Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit. Legality of underlying conduct is not necessarily a defense to a claim under c. 93A. Chapter 93A does not define what constitutes an unfair or deceptive act or practice. Such a definition would be impossible, because, as the Appeals Court aptly noted, “[t]here is no limit to human inventiveness in this field. Although G.L.c. 93A, §2(b), states that courts are to be guided by the Federal Trade Commission and Federal court interpretations of the Federal Trade Commission Act, unfair or deceptive conduct is best discerned from the circumstances of each case. Even if the defendants had the right to foreclose, as the judge found, it was clearly unfair, within the meaning of c. 93A, to use that right for a reason so obviously against public policy.” But that observation does not supply the answer in a case such as this. Unlike in the Williams case, supra, where the mortgagor was engaged in a last minute negotiation for terms that would not have resulted in full payment for the mortgagee, here the plaintiffs had a buyer willing to pay ap *37 proximately $60,000 above the cost of the equity of redemption which would have resulted in full recovery of the amount due to the mortgagee, including costs, and left some funds available for the plaintiffs.
(Citations and quotations omitted.)
Even though there is no dispute that plaintiffs failed to make several mortgage payments, and, therefore, that Chase had a legal right to exercise its power of sale, the law requires that it must “exercise the utmost good faith,” Taylor, 233 Mass, at 247, and use reasonable diligence to protect the interests of the defaulting home owner. Williams, supra, 417 Mass, at 383. See Levin v. Reliance Co-Operative Bank, 301 Mass. 101, 103 (1938) (a mortgagor has a basis for a tort action against the mortgagee despite the existence of a default whenever a foreclosure is conducted negligently or in bad faith); Fenton v. Torrey, 133 Mass. 138, 139 (1882) (one who undertakes to exercise the power of sale in a mortgage must act in good faith and with a careful regard for the interest of the principal). In circumstances such as these, the mortgagee “cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power [of sale].” Montague v. Dawes, 14 Allen 369, 373 (1890).
Here, not unlike the situation in Drinan v. Nichols, 115 Mass. 353, 357 (1874), before the auction took place, the mortgagee had knowledge (1) that a buyer for the property had been found by the plaintiffs, (2) that the prospective buyer had made a legally binding commitment to purchase the property, (3) that the buyer had not made the offer subject to the condition that he secure financing, (4) that the buyer had a solid commitment for the sale of his own home to another person who had secured financing, and (5) that the buyer was willing to pay a price for the plaintiffs’ home that would result in a full recovery of all the money due to the mortgagee, including its costs, under the note and mortgage. Moreover, under the terms of the foreclosure sale established by the mortgagee, anyone who would buy the property at auction had 30 days following the date of the sale in which to pay the balance of the purchase price. Thus, the mortgagee was willing to extend a reasonable period of time to anyone who bought the home at auction to pay the balance of purchase price, but it was not willing to extend a reasonable period of time to the plaintiffs, the legal owners of the property, who had secured a buyer for it at a market rate. The position taken by the mortgagee that it had a right nonetheless to proceed with the auction and sell the property in such circumstances due to the plaintiffs earlier default is to elevate compliance with the formalities required to exercise the contractual power of sale contained in the mortgage over the fiduciary obligation it owed to the mortgagee and the dictates of basic fairness.
4. Conclusion
Ownership of a home is the dream of most Americans. Home ownership is an important factor in building stronger families, and in creating a safe and nurturing environment for our children. Home ownership contributes in other significant ways to the welfare of our communities such as the payment of property taxes by homeowners and the stability home ownership brings to neighborhoods. The public policy of our Commonwealth encourages home ownership. Unfortunately, it is a dream that most American families will never realize.
This is a case in which a family, which owned its own home, subject to a mortgage, suffered the economic devastation that comes with the loss of a husband or wife’s employment and the collateral consequence of not being able to pay the mortgage. The plaintiffs acted prudently to secure a purchaser for their home at a market rate to enable them to fully pay the mortgagee and to recover the equity they had earned during the time they owned the property and were paying the mortgage. The plaintiffs did not ask Chase to alter the terms of the mortgage or note, nor to accept payment at a discounted rate, but simply to postpone the foreclosure sale for a reasonable period of time and to give further consideration to a transaction that would have resulted in funds in an amount sufficient to pay the balance due on the note and to fully reimburse the mortgagee for its costs while leaving a significant amount available for the family to use towards another home. The defendant’s refusal to postpone the foreclosure sale was an act that breached a duty it owed to the plaintiffs and caused them to suffer harm. The law provides a remedy in such a case. The court does not reach this conclusion by disregarding or diminishing the lawful interest of the defendant Chase in protecting the collateral for its loan, or in ultimately recovering all the money due under the note, including the costs of collection. There is nothing in the record before me that suggests that by postponing the sale, Chase would have suffered any financial loss. Yet, a postponement of the auction would have created a reasonable opportunity for the plaintiffs to maximize their return from the sale of home. On these facts, defendant Chase failed to meet its obligation to act with the utmost good faith and reasonable diligence to protect the interests of the plaintiffs.
On the facts before the court there is no genuine question of fact as to liability that requires a trial. Although the plaintiffs did not file a cross motion for summary judgment, it is open to the court to enter judgment for the plaintiffs, on the issue of liability, in circumstances such as these. See Mass.R.Civ.P. 56(c). Based on the above, defendant Chase, as mortgagee, failed to satisfy its duty owed to the plaintiffs by not postponing the auction in order to give meaningful consideration to a legally binding offer to purchase the *38 property and thus to obtain for the property as large a price as possible.
ORDER
For the above reasons, It is hereby ORDERED and ADJUDGED that even though the defendant Chase may have complied with the statutory provisions governing the foreclosure of real estate mortgages, its failure to postpone the auction to permit further inquiry into the viability of the prospective buyer obtained by the plaintiffs was not in compliance with its duty to act in the utmost good faith, and was in violation of its fiduciary duty to the plaintiffs to obtain for the properly as large a price as possible, and constituted an unfair or deceptive act or practice in violation of G.L.c. 93A, §2. For this reason, the defendant Chase’s motion for summary judgment is DENIED and summary judgment as to liability under G.L.c. 93A, §9 only is ALLOWED against defendant Chase as to the plaintiffs. The case should be set down for an assessment of damages, including an award of attorneys fees, against defendant Chase.

 The plaintiffs also sought injunctive relief which was denied at an earlier stage of the proceedings.

 The sale of the plaintiffs’ home at such a price would have resulted in full payment to the mortgagee with as much as $50,000 left over for the plaintiffs to use as a down payment on another property. See text infra

 There is no evidence about the nature of the review conducted by the defendant, and accordingly I will not make any assumptions about it. However, in light of the result reached in this case, the nature of such review and the nature of the response provided to the home owner as a result of such review could prove to be a critical, outcome determinative fact.

 The plaintiffs assert that Mr. Thomas “was the apparent high bidder with a bid supposedly one dollar over the mortgage balance. As of December 31, 2002, there has been no recordings of the auction or the mortgage deed in the Worcester Registry of Deeds.” Plaintiffs’ Joint Affidavit, paragraphs 20-21. The defendants affidavit is silent on the terms of Mr. Thomas’s successful bid.

 There is no evidence that the plaintiffs engaged in purposeful delay in their efforts to find a willing buyer; in fact there is no evidence about the activities of the parties from the time of the default until the notice of foreclosure. Therefore, I assume that both parties acted in good faith, at least up to the point when the defendant was asked to postpone the sale.