McCann, J.
INTRODUCTION
The plaintiffs Lynn M. Snowden and Kenny L. Snowden are represented by Arthur Goldstein, Esq. The defendant Chase Manhattan Mortgage Corp. is represented by Charles A. Lovell, Esq. The defendant Mel Thomas is represented by Richard M. Plotkin, Esq.
The complaint is in one count against Chase Manhattan Mortgage Corp. and Mel Thomas. Chase Manhattan Mortgage Coip. foreclosed on the mortgage of Lynn M. Snowden and Kenny L. Snowden which was then in default. The bank auctioned their property which was purchased at auction by the defendant Mel Thomas. At the time of the auction, Lynn M. Snowden and Kenny L. Snowden had found a bona fide purchaser for the property at a price far in excess of the balance of their mortgage. Plaintiffs seek damages from Chase Manhattan Mortgage Corp. and relief under G.L.c. 93A. They also seek authority to sell the property acquired by the defendant Mel Thomas.
BACKGROUND
On January 2, 2003 the plaintiffs, Lynn M. and her husband Kenny L. Snowden (collectively “Snowden”) brought a civil action against the defendants, Chase Manhattan Mortgage Corporation (“Chase”) and Mel Thomas. The Snowdens admittedly defaulted on their mortgage and received timely notice that Chase intended to exercise its power of sale and foreclose on *668 their home. The Complaint alleged that Chase violated the law by refusing to postpone an auction of their home in spite of evidence that the Snowdens had a signed purchase offer from a willing and financially-able buyer at a price substantially exceeding what the plaintiffs owed on the mortgage. Chase moved for summary judgment pursuant to Mass.R.Civ.P. 56. The court, Agnes, J., denied Chase’s motion for summary judgment and allowed summary judgment for the plaintiffs as to liability under G.L.c. 93A, §9 only against Chase [17 Mass. L. Rptr. 27]. In response to the court’s Memorandum of Decision and Order on behalf of the plaintiffs, the plaintiffs filed motions to assess damages and attorney fees.[1] This Court deals with that latter portion only.
ISSUES PRESENTED
1. Pursuant to G.L.c. 93A, do sufficient grounds exist in this case to justify doubling or trebling damages?
2. Can an award of attorneys fees be based upon a contingency fee agreement?
DISCUSSION
1. Assessment of Damages
The Court having reviewed all of the papers filed herein including the respective motions, affidavits, memoranda and the decision of Agnes, J. dated November 5, 2003 [17 Mass. L. Rptr. 27]], the Court assesses the following damages: $40,236.04 for damages on the sale; and $452.09 for damages relating to interest which is dealt with on pages 6, 7 and 8.
The Court determines those damages as follows: Snowden sale price $155,000 less approximated real estate commission 6%, $9,300; attorneys fees $500; Massachusetts Excise Tax $706; smoke detector Fire Department Certificate $25.00; first mortgage balance to Chase Manhattan $104,232.16; balance $40,236.04.
2. Multiple Damage Award
Citing various “examples” of Chase’s alleged misconduct, the plaintiffs seek double or treble damages. “Chapter 93A ties liabiliiy for multiple damages to the degree of the defendant’s culpability by creating two classes of defendants ... [Those who] have committed relatively innocent violations of the statute’s substantive provisions . . . are not liable for multiple damages . . . [whereas those] who have committed ‘willful or knowing violations’ ” are penalized by an assessment of multiple damages. International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). A finding of a willing or knowing violation requires an award of multiple damages. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 475 (1991).
Depending on the egregiousness of the “willful or knowing” conduct, the trial judge may assess between double and treble damages. Id., G.L.c. 93A, §11. A judge is also authorized to double or treble the amount of actual damage if, after timely receipt of a demand letter, the defendant’s refusal to grant relief was made in bad faith with knowledge or reason to know that the complained of conduct or practice violated G.L.c. 93A, §2. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 627 (1978). As there is no record of a demand letter sent by the plaintiffs to Chase or of Chase’s refusal to grant relief, multiple damages can only be awarded in this case if the court finds that Chase has willfully or knowingly employed unfair or deceptive practices.
Simple negligent unfairness or deception does not warrant the award of multiple damages. Squeri v. McCarrick, 32 Mass.App.Ct. 203 (1992). Rather, willful or knowing conduct requires a “more purposeful level of culpability.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 681 (1986) (where a violation of the standard of fairness imposed by c. 93A resulted from the negligent failure to clarify ownership, not “the intentional employment of sharp practices,” the penalty provisions of Section 11 were unwarranted). “Ultimately, c. 93A ties liability for multiple damages to the degree of the defendant’s culpability,” and based upon his “experience with the case in its entirety” a judge has discretion to award up to treble damages where the degree of culpability is particularly pronounced. Kattar v. Demoulas, 433 Mass. 1, 16 (2000), citing Clegg v. Butler, 424 Mass. 413, 420 (1997) (a trial judge’s c. 93A findings are left undisturbed unless clearly erroneous). “A finding of‘wilful’ conduct within the meaning of c. 93A is satisfied where the defendant has acted recklessly.” Kattar v. Demoulas, 433 Mass. 1, 14-16 (2000) (finding of willful violation upheld where defendants’ foreclosure on plaintiffs property was retribution for plaintiffs refusal to testify in reckless disregard for the truth), citing St. Paul Surplus Lines Co. v. Feingold & Feingold Insurance Agency, Inc., 427 Mass. 372, 377 (1998); Montanez, 24 Mass.App.Ct. at 956; see Computer Systems Engineering, Inc., 571 F.Sup. at 1375 (applying Massachusetts law, a finding of willful violation by fraud was upheld where the defendants did not know a fact but represented a fact to be true with reckless disregard for its truth or falsity).
The culpable state of mind required for the imposition of penalty damages under c. 93A relates to the defendant knowingly or willfully engaging in conduct that is unfair or deceptive, and does not, as Chase suggests, require actual knowledge of the law or that the conduct violated the law.[2] See Heller, 376 Mass, at 627; Montanez v. Bagg, 24 Mass.App.Ct. 954, 956 (1987) (rescript) (requiring not actual knowledge of the terms of the statute to find knowing or willful violation of c. 93A, but rather “knowledge, or reckless disregard, of conditions ... which, whether the defendant knows it or not, amount to violations of the law”). The relevant state of mind is that which existed at the time the action was taken. Computer Systems Engineering, Inc. v. Qantel Corp., 571 F.Sup. 1365, 1373-74 (1st Cir. 1983).
*669 Thus, in order to recover double or treble damages, the plaintiffs in this case must show that Chase willfully or knowingly employed unfair or deceptive practices in violation of G.L.c. 93A, §2. In his Memorandum Of Decision And Order on the Cross Motions for Summary Judgment, Judge Agnes notes that “[o]n December 19, 2002, Chase and its attorneys reviewed the Offer to Purchase as well as the request to postpone the sale for several weeks, and decided to proceed with the auction scheduled to take place that afternoon.” In a footnote, he adds, “There is no evidence about the nature of the review conducted by the defendant, and accordingly I will not make any assumptions about it. However, in light of the result reached in this case, the nature of such review and the nature of the response provided to the home owners as a result of such review could prove to be a critical, outcome determinative fact.” Nonetheless, the plaintiffs fail to present any evidence on, or even mention, this issue.
Instead, the plaintiffs claim that willful violation can be found because: (1) Chase has erroneously computed the defaulted interest, overcharging the plaintiffs by $1,360.55, in violation of G.L. 140D;[3] (2) the surplus from the sale was not remitted to the plaintiff: and (3) Chase misrepresented the corporate status of the auctioneer at the foreclosure sale. The third allegation is simply unfounded. Plaintiffs counsel misspelled the name of the auctioneer in a computer search on both attempts, the first by spelling “auctiion,” instead of auction and “assoc.,” inc. instead of “associates,” inc. and in the second instance by similarly spelling associates, so no listing was retrieved. The plaintiffs point out that Chase’s former counsel, the Harmon Law Offices, and the Commonwealth Auctions Associates, Inc.’s address are the same.[4] But if anything about the auction was irregular or improper, the plaintiffs completely fail to address it.
Thus, the only potentially meritorious argument for multiple damages raised by the plaintiffs is that Chase overcharged the plaintiffs on interest, and, as a result failed to properly disburse the surplus from the sale to the plaintiffs. The plaintiffs’ breakdown is based upon simple interest: “201 days times 8.50% divide (sic) by 365 days x $93,280.84 which equals $4,366.31 interest.” In justification for deducting $5,726.86 in interest from the proceeds of the foreclosure sale, Chase responds: “The Plaintiffs . . . greatly oversimplify how interest is calculated on the Note by merely taking the number of days and multiplying it by 8.5% of the principle balance as of the date of default.” Chase does not state how it calculated the interest, and the difference is $1,360.55.[5] Chase may have reached their number, in part, by compounding the interest monthly, i.e., charging interest upon the unpaid interest. In the absence of an agreement or equitable considerations to the contrary, however, which Chase does not identify, the mortgagee is not entitled to receive interest on overdue interest. Ratner v. Hill, 270 Mass. 249 (1930); Ellis v. Sullivan, 241 Mass. 60, 64 (1922) (recognizing “the ancient unwillingness to allow compound interest” absent an express agreement or equitable cause).
Chase also argues that, “interest accrues not only on the principle, but also on any escrow payments made by Chase on the Plaintiffs behalf and any fees assessed and incurred by Chase.” In the event of default by the mortgagor, the Note does entitle Chase to make any disbursements required by the covenants and agreements of the Note and as are necessary to protect the value of the property and the lender’s rights. According to the Note, any amounts disbursed “shall become an additional debt of the Borrower” secured by the security instrument and “shall bear interest from the date of disbursement, at the Note rate” of 8.5%. (Emphasis added.) In its memorandum, Chase lists a total of $2,130.51 in disbursements: escrow advances of $1,388.70, late charges of $581.81, property inspection fees of $105.00, and NSF charges of $55.00. From the four-page spreadsheet attached to plaintiffs’ memorandum, it is possible to determine the dates and amounts of disbursements made by Chase. Calculating simple interest at 8.5% per annum, only $26.69 in additional interest should have been added. (See page 8.) Finally, Chase also deducted $3,007.73 for legal fees and costs incurred during the foreclosure and an additional $1,855.00 associated with the plaintiffs attempt to obtain an injunction restraining the foreclosure sale. Paragraph 18 of the Note provides that upon default, Chase may invoke the statutory power of sale and “any other remedies permitted by applicable law.” Chase is “entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys fees and costs of title evidence.” Chase does not provide evidence of attorneys’ hours, rates, or costs for either the foreclosure sale or its opposition to plaintiffs’ request for an injunction.
As the balance sheet on the following page 8 demonstrates, the surplus from the foreclosure sale (including costs and legal fees for the sale but not the injunction) would have been $1,402.91. After charging the plaintiffs for the cost and expenses of fighting the injunction, however, this Court finds that there is a deficiency of $452.09. This Court assesses that amount as additional damages.
DESCRIPTION AMOUNT INT 8.5% PROCEEDS
Property Sale at Auction $104,235.00
Principal Due $ (93,280.84) Interest on
Principal $93,280.84 $4.366.31 $(4,366.31)
DISBURSEMENTS:
NSF Fees
2/15/02 $15.00 $1.06
7/24/02 $16.00 $0.53
*670 8/21/02 $15.00 $042
Total NSF Fees/ Interest $45.00 $2.02 $(47.02)
Fast Pay charges
2/15/02 $10.00 $0.71
4/30/02 $20.00 $022
Total Fast Pay Fees/ Interest $30.00 $1.98 $(31.98)
Property Inspection Fees
3/7/02 $27.00 $1.-91
8/30/02 $27.00 $1.91
9/26/02 $17.00 $1.20
11/1/02 $17.00 $1.20
1217/05 $17.00 $12Q
Total Inspection Fees/ Interest $105.00 $7.44 $(112.44)
Escrow Advances
4/3/02 #20322
(636.73-782.86) $146.13 $1.04
Payment $-146.13
4/4/02 #89901 $33.03 $0.27
Payment $-38.03
5/4/02 #89901
(32.40-38.03) $5.63 $0.04
Payment $-5.63
10/8/02 #71205
(20.78-489.00) $468.22 $9.95
11/1/02 #71205 $80.00 $0.91
11/4/20021*89901 $38.03 $0.42
12/4/02 #20322 $766.94 $2.60
12/4/02 #89901 $37.67 $0.12
Escrow Change $-2.15 $0.00
Total Escrow & Interest $1,383.71 $15.25 $(1,403.96)
Total Disbursements & Interest $1,566.71 $26.69 $(1,595.40) $(1,595.40)
Late Charges (@3%) $581.81 $ (581.81)
Foreclosure Fees & Costs $(3.007.73)
Foreclosure Surplus $ 1,402.91
Post Legal fees & Costs $(1,855-001
Balance $ (452.09)
In summary, under a simple interest calculation, it does appear that Chase overcharged the plaintiffs in interest, and as a result, Chase did not properly account for the surplus funds. If Chase has a legitimate reason for charging the additional interest, it fails to provide that reason to the court. There is no evidence that the overcharge was a willful or knowing violation, however, at most it appears to have been negligent, and does not justify multiple damages.
In determining Chase’s culpability, it is within the court’s discretion to consider the totality of the circumstances including: (1) Chase’s initial breach in its fiduciary duty by refusing to delay the foreclosure; (2) an overcharge of interest and inadequate accounting to the plaintiffs; and (3) possibly a willful and knowing overcharge of interest and failure to itemize after the issue is brought to Chase’s attention. This Court has considered all of the factors and determines tat with the evidence presented to this Court, there is not sufficient evidence to substantiate the doubling or tripling of damages and therefore the Court declines to do so.
2. Attorneys Fees
As a general rule, statutory award of fees are “calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate.” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). (This method is referred to as a “lodestar” award. Id.) The standard of reasonableness is not what the attorney usually charges, but “what his services were objectively worth.” Heller, 376 Mass, at 629. In Heller, the Supreme Judicial Court listed the crucial factors as: (1) how long the trial lasted; (2) the difficulty of the legal and factual issues involved; and (3) the degree of competency demonstrated by the attorney. Id. The SJC lengthened the list of factors to include “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979).
In Fontaine, the plaintiff raised the question “whether an attorneys fee, calculated by the lodestar method, may be enhanced in recognition of the contingent nature of an attorney’s recovery in these cases.” The Court stated, “In limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment.” Fontaine, 415 Mass, at 324. The Court found that where the issues of the case were not complex, there was a reasonably good chance of success, the “determination of liability raised no novel issues of law,” and the case had no significance for a wider class of persons beyond the plaintiff, then “the basic fee award, calculated by the lodestar method, [was] . . . adequate to achieve the statutory purpose” and enhancement was not warranted, Id. at 326. The Court also noted, however, that the “statutory provision for attorney fees aims to attract competent legal counsel for those with meritorious claims,” but is not “designed to provide a windfall recovery of fees.” Id.
In this case, as evinced by the denial of plaintiffs’ request for an injunction, the plaintiffs did not have a strong chance of success. When plaintiffs attorney accepted this case on contingency, there was a definite risk of nonpayment. Thus, there is support for enhancing the basic fee award, calculated by the lodestar method. However, this Court determines that reasonable attorneys fees are to be assessed in the amount of $10,000.00, and that amount is reasonable given the facts before this Court.
Pursuant to the Findings of Agnes, J. on the Cross-Motions for Summary Judgment, the Motion for Summary Judgment by Chase Manhattan Mortgage Corp. is DENIED. On the Cross Motion for Summary Judgment by Lynn M. Snowden and Kenny L. Snow, Sum *671 mary Judgment shall enter and this Court assesses damages against Chase Manhattan Mortgage Corp. in the amount of $40,688.13; and further assesses reasonable attorneys fees in the amount of $10,000.00.
In view of the action taken by this Court and a finding that there is an adequate remedy at law by the assessment of damages and attorneys fees under G.L.c. 93A, no further action lies against the defendant Mel Thomas and therefore so much of the Complaint against him is therefore DISMISSED.
ORDER FOR JUDGMENT
Judgment shall enter DENYING the Chase Manhattan Mortgage Coip.’s Motion for Summary Judgment. Summary Judgment shall enter ALLOWING Lynn M. Snowden and Kenny L. Snowden’s Motion for Summary Judgment against Chase Manhattan Mortgage Corp. and damages shall be assessed in the amount of $40,688.13; and further attorneys fees are assessed in the amount of $10,000.00. Judgment shall enter DISMISSING the complaint against the defendant Mel Thomas.

 Chase’s single response to their motions was attached. A hearing was held on January 21, 2004. Plaintiffs’ counsel filed a Supplemental Affidavit of the Counsel For the Plaintiffs in Support of Their Motion to Assess Damages and to Assess Attorneys Fees (“Supplemental Affidavit”). Two days after the hearing, Chase served and submitted to the court its Supplemental Response. The plaintiffs’ motion to strike Chase’s Supplemental Response is denied.

Chapter 93A makes “conduct unlawful which was not unlawful under common law or any prior statute.” Commonwealth v. DeCotis, 366 Mass. 234, 244 n.8 (1974).

The Massachusetts Consumer Credit Cost Disclosure Act (“CCCD”), also known as the Massachusetts Truth in Lending Act.

Mark P. Harmon is listed as the president of Commonwealth Auction Associations, Inc.

Plaintiffs argue that the $1,360.55 difference demonstrates Chase actually charged a higher interest rate than they disclosed, and, therefore, the plaintiffs are entitled to rescind the loan and obtain a refund of interest for Chase’s alleged violation of disclosure rules under the Massachusetts Consumer Credit Cost Disclosure Act (“CCCDA”). G.L.c. 140D, §§1-34 (West 2002 & Supp. 2003). However, even assuming that Chase failed to comply with the disclosure requirements of CCCD, an obligor’s right of rescission “shall expire four years after the date of consummation of the transaction or upon sale of the property . . .” G.L. 140D, §10(f). “[A] foreclosure sale would terminate an unexpired right to rescind.” In re Hall 188 BR. 476, 484 (Mass. 1995). The plaintiffs’ Complaint does not mention CCCD or seek rescission, and the plaintiffs did not seek to invalidate the sale. The statute of limitations expired on or about October 2003, so the plaintiffs are now bared from rescission by both the foreclosure of the mortgage and the statute of limitations. Id.