By the present motion, Plaintiffs Brett-Ashleigh George and the Committee for Public Counsel Services (the"Plaintiffs") petition for an award of their reasonable attorney's fees and costs of litigation as prevailing parties under the Massachusetts Public Records Law, G.L. c. 66, §§ 1-21 (the"PRL"). This motion follows the conclusion of a year-long lawsuit in which the . Plaintiffs, criminal defense lawyers, sought and obtained production of a substantial volume of public record from the Massachusetts State Police ("MSP"). The requested records related to the on-duty practices of a trooper involved in the search and arrest of a criminally accused client, documents Plaintiffs needed for the preparation of a forthcoming suppression motion.
            The PRL invests the Court with discretion to "award reasonable attorney fees and costs in any case in which the requester obtains relief through a judicial order, consent decree, or the provision of requested documents after the filing of a complaint." G.L. c. 66, § 10A(d)(2).
 
                                                            -1-
 
Although fee awards are not compulsory, the statute provides that "[t]here shall be a presumption in favor of an award of fees and costs" barring the presence of one or more of five enumerated circumstances[1] that both sides acknowledge are not implicated in the present case.
            Having now reviewed the materials and arguments submitted in support of and opposition to Plaintiffs' fee application, and discerning no need for further hearing, the Court has determined in its discretion to ALLOW said application in part and DENY the application in part. My rulings and reasons follow.
DISCUSSION
            Under§ 10A(d)(2) of the PRL, Plaintiffs may be awarded "reasonable" attorney's fees and costs incurred in connection with the successful prosecution of their records claims. Massachusetts courts generally follow the "lodestar method" for determining the reasonableness of an attorney's fee application, a method that entails a multiplication of the hours reasonably expended in a case times a reasonable hourly rate by the petitioning lawyer(s). See Sutton v. Jordan's Furniture, Inc., 493 Mass. 728, 742 (2024) ("The lodestar method is generally used for calculating attorney's fees under fee-shifting statutes."); Killeen v. Westban Hotel Venture, LP., 69 Mass. App. Ct. 784, 790 (2007), quoting Fontaine v. Ebtec Corp.• 415 Mass. 309, 325-26 (1993)("The 'basic measure of reasonable attorney's fees' is a 'fair market rate for the time
 
--------------------------------------------
 
[1] These circumstances are:
            (I)        The Supervisor of Public Records found that the agency had not violated the PRL;
            (ii)       The agency reasonably relied upon a published opinion of an appellate court based on substantially similar facts;
            (iii)      The agency reasonably relied upon a published opinion of the Attorney General based on substantially similar facts;
            (iv)      The underlying PRL request was designed to harass or intimidate; or
            (v)       The request was not in the public interest or was made for a commercial purpose unrelated to disseminating information to the public about government activity.
G.L. c. 66, § 10A(d)(2Xi)-(v).
 
                                                            -2-
 
reasonably spent preparing and litigating a case' ... known as the 'lodestar' approach"). Accord Commonwealth v. Santos, 99 Mass. App. Ct. 360,366 (2021); Brady v. Citizens Union Sav. Bank, 91 Mass. App. Ct. 160, 161 n.7 (2017). "[T]he results it produces "should govern unless there are special reasons to depart from them."' Killeen, 69 Mass. App. Ct. at 790, quoting Stratos v. Department of Pub. Welfare, 387 Mass. 312,322 (1982). In this connection, the reasonableness of an attorney's fee isinformed by a range of considerations, including the complexity of the issues in the case, the extent of the success obtained, the experience and caliber of the lawyers, the prevailing market rate for legal fees charged in similar cases in the jurisdiction, and the need to avoid awarding fees that are duplicative, unnecessary, or unfairly out of proportion to what was at stake in the litigation. Haddad v. Wal-Mart Stores, Inc., 455 Mass. 1024, 1025 (2010). Accord Rass Corp. v. Travelers, Inc., 90 Mass. App. Ct. 643,658 (2016). The party seeking a fee award bears the burden to demonstrate the reasonableness of its application, Beninati v.Borghi, 90 Mass. App. Ct. 556,568 (2016), a burden the undersigned will require Plaintiffs to carry with convincing evidence in light of the fact the PRL does not entitle them to such an award as a matter of right. See G.L. c. 66, § IOA(d)(2) (Court"may award reasonable attorney fees and costs ... "). See also Commonwealth v. Santos, 99 Mass. App. Ct. 360,367 (2021), quoting Strand v. Hubbard, 31 Mass. App. Ct. 914,915 (1991) ("To be sure, conservative principles should apply to the determination of what is a reasonable fee when the pocket from which the fee is drawn belongs to someone other than the person who hired the lawyer.").
            In the case at bar, there can be no serious question but that Plaintiffs were substantially successful in securing the vast majority of the public records they sought. Plaintiffs' requests for records were met with prolonged unresponsiveness and then active resistance from the MSP.
 
                                                            -3-
 
Plaintiffs suffered an initial delay in receiving any kind ofresponse to their May, 2024 PRL request, ultimately prompting them to file an appeal to the Supervisor of Public Records some four months after the service of their request. The Supervisor found in Plaintiffs' favor on September 25, 2024, and ordered the MSP to serve a statutorily compliant response within ten days. MSP then provided just two records consisting of three pages over the ensuing six weeks (even as it acknowledged the existence of other public records it had not produced), and then additionally reneged on serial assurances that a proper response with further records would be provided by November 6, 2024. Plaintiffs thereupon commenced their PRL action. By tlris point, fully 186 calendar days had passed since the service of Plaintiffs' initial records request; and, despite a statutory dictate that requested documents be turned over within ten days, see G.L. c. 66, § 10(b), MSP had all but ignored its production obligation. This was not a case where overly aggressive records-seekers jumped the gun on a minor infraction to get into court, when reasonable patience and accommodation would have yielded the document production to which they were entitled under the PRL.
            Over the succeeding three months, time records reflect that the parties engaged in extended discussions and negotiations over the Plaintiffs' requests. Plaintiffs appear both to have narrowed the scope of their demands, and acceded to certain MSP claims of exemption due to pending prosecutions and open investigations. By February 5, 2025, MSP had produced 37 additional reports, totaling 319 pages. Plaintiffs thus secured fully 95% of the documents turned over, and 99% of the pages produced, only after their filing of suit. By any rational measure, therefore, Plaintiffs achieved their objectives in and by reason of this litigation.
            On February 12, 2025, and without explanation, the Commonwealth withdrew the criminal charges against Plaintiffs' client that had been the animating reason for the PRL
 
                                                            -4-
 
requests made in this case. Satisfied with its records production, Plaintiffs' counsel notified MSP that no further documents would be needed, and that the parties could stipulate to a dismissal of the action following agreement on the matter of attorney's fees. On February 13, 2025, Plaintiffs forwarded a written demand for $17,845.50 in attorney's fees and costs, and expected the litigation would resolve by settlement shortly thereafter. Sadly, this did not come to pass. Toe filed time records in this case reflect that, over the next eight months, the parties engaged in an intermittent and ultimately unsuccessful effort to resolve the matter of Plaintiffs' attorney's fees. What this means is that a PRL lawsuit whose underlying dispute had, in substance, resolved in less than 90 days languished another eight months in a fee-fight. Of the 148 total hours expended by Plaintiffs' lawyers in this case, more than 100 (fully 2/3 of them) were devoted to.the issue of legal fees following MSP's fulfillment of its PRL obligation. This squabble, in turn, has caused a $17,845 fee demand to balloon to $41,437 (and counting).
            Which brings the Court to Plaintiffs' pending fee application. MSP does not dispute the Court's discretionary authority to award attorney's fees and costs in this case. It recognizes that the Plaintiffs prevailed in their effort to secure public records due them under the PRL, and does not argue that any meaningful portion of the time expended by their lawyers was in the service of unsuccessful ends in the litigation. MSP likewise appears to concede that, barring a judicial discount, conventional application of the lodestar method yields a fee award comparable to what Plaintiffs seek. Plaintiffs' lawyers were appropriately skilled, charged market-nonnative rates, and - for the most part- spent reasonable and non-excessive numbers of hours in the various tasks associated with their PRL prosecution[2]. MSP instead opposes Plaintiffs' fee petition on two
 
--------------------------------------------
 
[2] MSP does question the 21 hours Plaintiffs' counsel spent researching, drafting and serving the 51-paragraph Complaint (an amount of time the Court doesnot consider inordinate), and also challenges the 45 hours Plaintiffs' counsel devoted to preparation of their fee petition (a time expenditure the Court agrees is excessive). This latter matter is addressed in the within award, infra.
 
                                                            -5-
principal grounds. First, MSP urges that, given the case's relative lack of factual and legal complexity, and the fact that Plaintiffs were burdened with very few of the normal demands of civil litigation (viz., they took no discovery and attended just one court hearing), their $41,437 fee petition is unreasonable. See Friedman v. Div. of Admin. L. Appeals, 103 Mass. App. Ct. 806, 814 (2024) ("While the dominant purpose  of the  ...  law is to  afford the  public broad access to governmental records, the general principle is tempered by the standard of reasonableness.") (internal citations and quotations omitted).
            The Court agrees, but only in part. It is certainly true that this case did not present especially complex questions of law, and that the litigation itself entailed no formal discovery, motion practice, evidentiary hearings, or (until the present fee dispute) legal briefing. Nevertheless, it cannot be gainsaid that PRL lawsuits often involve a wide range of non-forensic matters, such as factual investigation, research, and negotiation with opposing counsel concerning matters of privilege, exemption and the terms and conditions of records release. Although such matters may not show up on the docket sheet, they do constitute compensable legal work within the purview of the PRL's fee-shifting provisions.[3] Such is the case here.
            Having reviewed the time records in this case, the Court finds ample support for the attorney's fees claimed through February 13, 2025, the date when Plaintiffs determined they had achieved all of their records-related objectives and served a $17,845 fee demand on MSP. Expending such an amount in legal fees and costs over the course of three months was hardly excessive, particularly in light of the unalloyed success Plaintiffs achieved. Applying the
 
--------------------------------------------
 
[3] Moreover, the PRL itself encourages records-seekers and government agencies to negotiate compromises in the scope, substance and timing of requested document production before resorting to the courts. It would be a perversion of common sense, and offend the very purposes of the PRL (viz., the expeditious accessibility of public records, see 950 Code Mass. Regs.§§ 32.00 et seq.),to discourage such compromises - as denying fee-shifting for work performed outside the confmes of formal court and discovery proceedings would surely do. This is a recipe for unnecessary litigation in an already too-litigious realm, and cannot possibly have been the intent of the Legislature.
 
                                                            -6-
 
foregoing principles of judicial review, Plaintiffs' claimed PRL fees through February 13, 2025 are reasonable and fairly awarded.
            What troubles the Court, however, is the legal fees incurred over the succeeding eight months. By February 13, 2025, the substantive records dispute that spawned this litigation had resolved. Plaintiffs had the records they sought, and any collateral disagreements had concluded. All that remained to be settled was the matter of their attorney' s fees and costs; and, given the relatively modest amount of money in issue, this matter should have been susceptible to compromise in short order. What appears to haveoccurred instead is that the parties dug in their heels and bickered for months over fees; and, during this window, Plaintiffs' counsel expended more than twice the number of hours they had spent litigating the underlying  case to  its successful conclusion. In these circumstances, the Court must agree that the $23,591 in additional fees Plaintiffs incurred documenting and demanding their own lawyers' fees is excessive and unreasonable[4].
            What to do about these excess fees, however, represents a head-scratch. The Court would naturally be prepared to award some modest fees (say, $2,000) for the time spent preparing Plaintiffs' current fee petition, as the law customarily allows. But to write down the remaining $21,591 in cl ed fees might unfairly punish Plaintiffs whose initial (and reasonable) fee demand on February 13, 2025 was spumed by MSP. On the other hand, to compensate Plaintiffs withall of these outsized fees might incentivize inflexibility on the part of prevailing PRL litigants, inviting them to hold fast to unreasonable demands and thereby expose government
 
--------------------------------------------
 
[4] By the Court's back of the envelope math, Plaintiff's current demand of$41,437 in legal fees represents a nearly 2.5x increase over their original ask. All of which fees were incurred arguing about and attempting to prove their lawyers' entitlement to ever-burgeoning legal fees. Small tails wagging large dogs in this manner is the very definition of unreasonable.
 
                                                            -7-
 
adversaries to the unfair risk of ever-expanding fee liability. Both concerns are valid; and although the Court cannot say with any confidence which party in the case at bar owns greater responsibility for the failure to find agreement on the matter of attorney's fees back in February of 2025,[5] it is surely true that both sides bear some measure of fault. In these circumstances, the Court will strike half of the Plaintiffs' claimed attorney's fees for the period between February
13, 2025 and the filing of the instant petition ($11,795.50).[6]
            The Defendant's companion argument in opposition to Plaintiffs' fee petition asserts, in sum and substance, that MSP is doing the best it can to comply with the PRL, but lacks the resources required to do so in accordance with the statute's terms. MSP thus points out that it faces a tsunami of public records requests (averaging 34 per calendar day), a volume that its staff of 11 analysts are incapable of managing within the strict time regimen dictated by the PRL. The Court is not without sympathy for MSP's position, all too familiar as it is with the burden placed on government actors having to do more with less in an age of budgetary under-funding. The ineluctable fact remains, however, that the PRL embodies an important legislative priority in government transparency, and compliance with this statute simply cannot be waived away or excused with a "Did our best with what we had" defense.
            The PRL's Supervisor of Records possesses no enforcement powers, and monetary damages under this law are capped at $5,000. See G.L. c. 66, §§ l0A(a), (c)-(d). Fee liability, therefore, is the principal lever incentivizing compliance with the law. Commonwealth v.
 
--------------------------------------------
 
[5] The Court recognizes that it could hold an evidentiary hearing addressed to this question; but, given the relatively modest size of the legal fees in dispute, the further expenditure of lawyer time and judicial resources seems unwarranted. ·
[6] This compromise at once encourages PRL defendants to agree to reasonable fee demands from prevailing records litigants (understanding that such defendants bear the risk of increasing legal fees if they do not), and at the same time discourages PRL plaintiffs from holding fast to implacable fee demands (understanding that, even if such plaintiffs prevail, their fee recovery will be paid in 50-cent dollars). Whether or not other courts elect to follow this rule of reason, it seems like the fair thing to do in the present case.
 
                                                            -8-
 
Augustine. 470 Mass. 837, 842 (2015) (fee-shifting provisions "act as a powerful incentive against unlawful conduct"). Plaintiffs thus have it right when they argue that public record- holders·like MSP confront a stark choice: either devote sufficient resources to answering proper records requests in accordance with the PRL, or bear the costs and fees of private litigants who compel such compliance through legal action. (Ultimately. the financial expense of PRL compliance will be borne by the government (funded by taxpaying citizens), and there is no easy fix.) Faced with the foregoing choice, the Commonwealth can either (1) increase the funding of its agencies most burdened by PRL compliance; or (2) such agencies can reallocate their existing resources (or deploy them more efficiently) to reduce the incidence of PRL litigation, an adjustment in operations that would likely cause harm to the de-resourced priorities; or (3) the Legislature can amend the PRL in some manner to make compliance on the part of affected agencies more achievable. Take your pick. What the government cannot do, however, is violate the PRL in material respects, and then ask the Court to look the other way when prevailing plaintiffs present their bill.
CONCLUSION AND ORDER
            In accordance with the foregoing, Plaintiffs' Motion for Attorney's Fees is ALLOWED IN PART and DENIED IN PART. Within ten days of the date hereof, the MSP shall provide Plaintiffs with a fees and costs remittance of $29,641.[7]
SO ORDERED.
/s/Robert B. Gordon
Justice of the Superior Court
Dated:
January 5, 2026
 
--------------------------------------------
 
[7] This award is arrived at by taking the $17,845.50 in attorney's fees and costs incurred through February 13, 2025 (the date Plaintiffs achieved their PRL objectives and presented a reasonable fee demand in that amount to MSP), and adding to it one-half ($11,795.50) of the remaining fees incurred from that date forward.